WILLIAM D. WINSOR & others *vs.* HARRIS ULIN.

Suffolk.    January 18, 1916. — March 3, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Covenant. Contract,* Construction. *Landlord and Tenant.*

A lease of certain real estate was executed on June 9, 1913, for a term of twelve years beginning June 1, 1913. As of April 1, 1912, the land (apart from the buildings) was assessed for the tax year 1912–1913 at $98,900. As of April 1, 1913, the same land was assessed for the tax year 1913–1914 at $125,000; but when the lease was executed neither party to it knew or could have known of the change in the assessed valuation. The lease contained the following provision: "The Lessee covenants to pay to the Lessors the said rent as aforesaid and . . . further covenants that during said term in every tax year in which the valuation of the land (not including the buildings thereon) . . . as valued by the Assessors for assessment of taxes shall exceed such present valuation thereof, namely, $98,900, he will pay to the Lessors as additional rent six (6) per cent of the amount of such excess." *Held,* that by this provision the parties to the lease agreed upon $98,900 as the "present valuation" of the land for the purpose of ascertaining the rent to be paid, and that accordingly the lessor was entitled to additional rent equal to six per cent upon the difference between $125,000, the amount of the increased assessment, and $98,900, that is to say, upon $26,100.

In the same lease it was provided that the additional rent above described should "be paid as follows: On the first day of October of the year in which such valuation shall first exceed such present valuation the Lessee shall pay to the Lessors one-half of said six (6) per cent, and thereafter on the days hereinbefore specified for the payment of rent the Lessee shall pay one-twelfth (1/12) of said six (6) per cent. On the first day of October in each year during said term there shall be an adjustment, and thereafter the monthly payments of such additional rent shall be based on the then excess, if any, in such valuation until the next adjustment. If such additional rent shall be payable hereunder in the tax year beginning April 1, 1913, or in the tax year beginning April 1, 1925, the same shall be apportioned." *It was said,* that this provision for apportionment presumably meant that, if such additional rent should be payable for the first year of the lease, the lessee should pay on October 1 only for the four months' period from the beginning of the term instead of for the half year from April 1.

De Courcy, J.   In substitution for a former lease, the parties on June 9, 1913, executed a lease of certain premises in Boston for the term of twelve years beginning June 1, 1913.   One of the provisions therein was as follows:

"The Lessee covenants to pay to the Lessors the said rent as aforesaid and to pay all charges for water, and further covenants that during said term in every tax year in which the valuation of the land (not including the buildings thereon) numbered 119–133 Hanover Street as valued by the Assessors for assessment of taxes shall exceed such present valuation thereof, namely, $98,900, he will pay to the Lessors as additional rent six (6) per cent of the amount of such excess, such additional rent to be paid as follows: On the first day of October of the year in which such valuation shall first exceed such present valuation the Lessee shall pay to the Lessors one-half of said six (6) per cent, and thereafter on the days hereinbefore specified for the payment of rent the Lessee shall pay one-twelfth (1/12) of said six (6) per cent.   On the first day of October in each year during said term there shall be an adjustment, and thereafter the monthly payments of such additional rent shall be based on the then excess, if any, in such valuation until the next adjustment.   If such additional rent shall be payable hereunder in the tax year beginning April 1, 1913, or in the tax year beginning April 1, 1925, the same shall be apportioned."

As of April 1, 1912, the land was assessed for the tax year 1912–1913 at $98,900.   As of April 1, 1913, it was assessed for the tax year 1913–1914 at $125,000.   When the lease was executed neither party knew of the change in the assessed valuation.   The sole question presented is whether the defendant is liable for the additional rental, from June 1, 1913, of six per cent on $26,100, the amount of the said increase in valuation.

It seems reasonably clear to us from the language used by the parties that they intended to agree upon $98,900 as the "present valuation" of the land for the purpose of ascertaining the rental. Their reason for doing so is obvious.   They knew this was the valuation for the preceding tax year, and it remained unchanged so far as they were aware.   Ordinarily it would be some months before tax bills would be sent out and they would learn of any change made by the assessors.   On the defendant's evidence,

assuming it to be competent, any increase would not be finally fixed until the tax warrant was made out and the tax rate declared, on or after the middle of August. Having agreed upon $98,900 as the "present valuation" for the purposes of the contract, they later, in the last sentence above quoted from the lease, made provision for any change that might be made in the assessment: stipulating that, if such additional rent should be payable for that year, it would be apportioned. By that presumably was meant, that instead of one half of the increase being payable October 1, representing the six months from April 1, the lessee would pay only for the four months' period from the beginning of the term.

So construing the covenant, the words "present valuation thereof" and "namely, $98,900," are not repugnant, calling for the rejection of the latter, as in *Birch* v. *Hutchings,* 144 Mass. 561. Rather the second clause is an explanatory one, specifically defining what the parties meant by the more general, and possibly ambiguous, words "present valuation," as used by them in the lease.

As there were no facts in dispute, the presiding judge * rightly directed a verdict for the plaintiffs.

*Exceptions overruled.*

*Lee M. Friedman,* (*S. L. Whipple* with him,) for the defendant.

*B. E. Eames & R. F. Hooper,* for the plaintiffs, were not called upon.

---

* *Stevens,* J., who ordered the jury to return a verdict for the plaintiff in the sum of $1,300. The action was to recover the additional rent. The defendant alleged exceptions.