CITY OF SALEM *vs.* HARRY G. BATCHELDER.

Essex.　April 3, 1929. — May 31, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Landlord and Tenant*, Construction of lease. *Practice, Civil*, Ordering verdict.

In a lease by the city of Salem of a pier for three years, it was provided: "1. The lessee shall establish and maintain a float or floats, and runways; shall personally have full charge of the pier during the summer seasons, and shall securely lock all doors, windows and gates during the closed or winter season. . . . 9. At the expiration of this lease or when the lessee herein of the demised premises shall from any cause vacate the same, . . . said demised premises of the lessee, including floats, runways and such improvements to said premises as shall have been made, shall thereupon revert to the City and be at the disposal of the Park Commissioners of said City, and the lessee shall have no right or claim hereunder." During the winter time the float and runway were not kept at the pier. During the summer after the termination of the lease, the defendant was given landing privileges at the pier. In August he received notice that his tenancy ceased and he was requested to move his boats and other personalty. He took away the float and runway. In an action of replevin by the city to recover the float and runway, the judge ordered a verdict for the plaintiff. *Held,* that

(1) The question before the court was not what the parties might have contemplated, but what was the legal effect of the covenant in the lease;

(2) Under clause 9 of the lease, title to the float and runway became vested in the plaintiff at the expiration of the lease, and as matter of law the plaintiff, as against the defendant, was entitled to the immediate possession of them on the termination of the lease;

(3) There being no issue of fact for the jury, the judge properly directed a verdict for the plaintiff.

REPLEVIN to recover a landing float and runway, alleged to be the property of the plaintiff, in the possession of the defendant. Writ dated August 10, 1925.

In the Superior Court, the action was tried before *Quinn,* J. Material evidence is stated in the opinion. The judge ordered a verdict for the plaintiff. The defendant alleged exceptions.

*G. C. Richards,* for the defendant.

*W. A. Pew,* City Solicitor, for the plaintiff.

PIERCE, J. This is an action of replevin to recover a landing float and runway, alleged to be the property of the plaintiff, in the possession of the defendant. The case was tried in the Superior Court to a jury. Upon the evidence introduced and the opening by counsel for the defendant, the judge directed a verdict for the plaintiff. The case is before us upon the defendant's exceptions "to this order and verdict."

The undisputed facts are, in substance, as follows: On January 1, 1922, the plaintiff owned a wharf in one of its parks. On that day the "Board of Park Commissioners of the City of Salem" by an instrument under seal leased to Marcella G. Moulton and the defendant, Harry G. Batchelder, doing business under the name of the Salem Bay Transportation Co., the "Salem Willows Pier, so called, with the buildings thereon, situated at Salem Willows, in the City of Salem, until January 1, 1925." By the terms of the lease it was understood and agreed that the lease was upon the following terms and conditions, to each of which the lessee agreed: " 1. The lessee shall establish and maintain a float or floats, and runways; shall personally have full charge of the pier during the summer seasons, and shall securely lock all doors, windows and gates during the closed or winter season. . . . 9. At the expiration of this lease or when the lessee herein of the demised premises shall from any cause vacate the same, or shall violate any condition or agreement herein contained, or shall receive notice from the Park Commission to vacate said demised premises, for breach of any of the conditions or agreements of this lease, or shall neglect or refuse to comply with any regulations already made or hereafter established for the good order and cleanliness of the demised premises, said demised premises of the lessee, including floats, runways and such improvements to said premises as shall have been made, shall thereupon revert to the City and be at the disposal of the Park Commissioners of said City, and the lessee shall have no right or claim hereunder."

During the winter time the float and runway were not kept at the pier. When the lease terminated on January 1, 1925,

the barrels under the float were stored in the headhouse on the pier and the float and runway were stored at Juniper Cove. After January 1, 1925, the float and runway were put back on the pier by the defendant, who was then given landing privileges on the pier. He used the float and runway in the summer of 1925 until the night of August 5, when he was notified by letter that his tenancy and service ceased at seven o'clock that night and he was requested to move his boats and other personalty. That night the defendant proceeded to remove the float and runway from the pier. With others, he dislodged the runway from the pier and dropped it into the water. It was towed out into the harbor and attached to the float, and the defendant went off with the float and runway. The float and runway that were replevied were the ones used by the defendant under the lease from January 1, 1922, to January 1, 1925, and were the same float and runway that on the night of August 5 were forcibly taken from the pier by the defendant and his assistants.

It is the contention of the defendant that the float and runway replevied, although they were the same float and runway that were used by him during the entire term of the lease, and during the tenancy at will that ensued until terminated on August 5, 1925, were a part of the demised premises when attached thereto and used therewith, but were not a part thereof when removed from the demised premises during the term; and that title thereto would pass to the plaintiff in case the defendant's occupancy should have been terminated before the fixed expiration of the lease on January 1, 1925. The defendant further contends that he had the right to go to the jury upon the issue whether the parties contemplated that any floats or runways should constitute any part of the demised premises during the closed seasons of the term or at the termination date of the lease, and supports his position by the argument that the words "at the expiration of this lease" in the ninth clause of the lease, *supra,* "do not include and are not connected with or related to the words 'floats, runways' as part of the demised premises, but are connected with or related to only the words which denote breach of the lease on the part of the defendant."

No question of the law governing tenants' fixtures and the right of removal of them during the continuance of the lease or at the expiration of the lease was involved. The issues raised were, Did the title to the float and runway vest in the plaintiff at the expiration of the lease on January 1, 1925? and, as against the defendant, Was the plaintiff on August 5, 1925, entitled to have the immediate possession of the float and runway, which on that day had been removed by force from the premises of the plaintiff? The question before the court was not what the parties might have contemplated, but what was the legal effect of the covenant in the lease. It is plain on the facts as they appear in the defendant's bill of exceptions that the questions for decision were questions of law and that there could be no issue of fact for the jury. As applied to the undisputed material facts, we think clause nine of the lease was rightly construed to vest the title to the float and runway in the plaintiff at the expiration of the lease, and that as matter of law the plaintiff, as against the defendant, was entitled to the immediate possession of them on August 5, 1925. There being no issue of fact for the jury, the judge properly directed a verdict for the plaintiff. *Winsor* v. *Ulin*, 223 Mass. 282.

*Exceptions overruled.*