## I. Robert Freelander & another, trustees, *vs.* G. & K. Realty Corporation.

Worcester. February 3, 1970. — May 12, 1970.

Present: Wilkins, C.J., Spalding, Kirk, Spiegel, & Reardon, JJ.

*Contract,* Construction.

Where it appeared in a suit in equity that a building on a certain parcel of land known as building "D" was supplied with heat only from a building on a second parcel, and that an agreement for the sale of the first parcel provided that "If . . . steam is not supplied . . . by Seller . . . the Buyer shall have the right to install a heating plant and the Seller will . . . pay half of the cost of said installation" by deduction from a purchase money note and mortgage to be given, that a deed of the first parcel to the buyer contained a similar provision, and that a mortgage note given by the buyer to the seller provided that "In the event maker installs a heating plant on the premises of Building 'D', for which this purchase money . . . note and mortgage is given, then maker shall have the right to deduct from this note" the sum due from the seller "in accordance with Agreement" of purchase, and that later the seller did not supply steam and the buyer installed a heating plant in a third building on a third parcel, it was held that the buyer was not entitled to deduct half the cost thereof from the note.

Bill in equity filed in the Superior Court on January 22, 1962.

The suit was heard by *Thompson,* J.

*Walter J. Griffin (Sumner Silver* with him) for the plaintiffs.

*Matthew R. McCann* for the defendant.

Spiegel, J. The plaintiffs bring this bill for declaratory relief seeking, inter alia, a decree that they are entitled to deduct the sum of $10,000 from the outstanding balance of a purchase money mortgage owed the defendant. The trial judge made "Findings of Fact, Rulings and Order for Decree." A final decree was entered favorable to the defendant from which the plaintiffs appeal.

There is no dispute as to the material facts.[1]  On December 3, 1957, the plaintiffs entered into an agreement with the defendant to purchase a parcel of land and the building located thereon, known as building "D."  The property, formerly part of a "complex of buildings" known as Graton & Knight Co., was located in the city of Worcester.  At the time the agreement was entered into, the defendant was in the process of "selling the buildings and various subdivided parcels to different small industries which were interested in purchasing factory space."

Building "D" contained no heating plant or boiler, and the agreement contained the following provisions relevant thereto:  "The Buyer agrees to buy from the Seller or its nominee and the Seller or its nominee agrees to furnish from the power plant, presently furnishing steam to said building, heat to 72° F. at a cost comparable to that charged by the average of any three (3) local steam suppliers, but said price in no event shall exceed $1.65 per 1,000 lbs.  This arrangement shall remain in effect so long as steam is supplied in a satisfactory manner.  If in the event steam is not supplied as aforesaid by Seller or its successors or assigns to the Power Plant, so-called, during the next ten (10) years and it is so determined by a qualified heat engineer, the Buyer shall have the right to install a heating plant and the Seller will guarantee to pay half of the cost of said installation with a maximum liability of Ten Thousand ($10,000) Dollars.  The Seller shall pay its share of said installation by deducting the said sum from the aforementioned note and mortgage.  The Seller represents that a power and steam company is being formed which may supply electricity at a rate of not in excess of commercial electric rates, and the company has agreed to supply any customer in the building.  The same company shall supply steam at prevailing commercial rates determined by the average charge by any three (3) local steam suppliers but not exceeding $1.65 per 1,000 lbs., and

---

[1] The parties entered into an "Agreement of All Material Facts" and the case is presented on an agreed record on appeal under S. J. C. Rule 1:04, 351 Mass. 734–735.

it is represented that the said power and steam company has agreed not to terminate its agreement to furnish steam except after giving six (6) months notice in writing unless failure is caused by acts or accidents beyond the control of said power plant. If, however, it does so and Buyer is obliged to install its own heating plant, then the provisions . . . hereof shall apply and such provisions shall represent the maximum of the liability assumed by the Seller."

On May 2, 1958, "a deed was executed and delivered from . . . [the defendant] to the plaintiffs" containing the following provision: "The Grantor, its successors and assigns, agrees to furnish and the Grantee, its successors and assigns, agrees to buy from the Power Plant presently furnishing steam to said building, heat to 72° F at a cost comparable to that charged by the average of any three local steam suppliers, but said price in no event shall exceed $1.65 per 1,000 pounds. This arrangement shall remain in effect so long as steam is supplied in a satisfactory manner. In the event steam is not supplied as aforesaid by the Grantor, or its successors and assigns, during 10 years from the date of this deed, and it is so determined by a qualified heat engineer, the Grantee, its successors and assigns, shall have the right to install a heating plant and the Grantor, its successors and assigns, covenant to pay one-half of the cost of said installation with a maximum liability of $10,000.00. The Grantor's share of said installation in the event the same is made shall be paid by the Grantee, its successors and assigns, by deducting the aforesaid sum from the purchase money mortgage which is being executed as part of this transaction."

In conjunction with the transfer of title to building "D," on May 2, 1958, the plaintiffs executed a mortgage and note in the amount of $92,000. The pertinent provisions of the note are as follows: "In the event maker installs a heating plant on the premises of Building 'D,' for which this purchase money, note and mortgage is given, then maker shall have the right to deduct from this note, one-half of the cost of said installation but no more than $10,000.00, all in ac-

cordance with Agreement dated December 3, 1957 between the parties."

The defendant subsequently supplied the plaintiffs with heat in accordance with the terms of the agreement, the deed, and the mortgage until January 25, 1960, at which time the defendant sold buildings "G" and "M" to L. H. Shingle Company. The power plant was located in building "M." On December 1, 1960, L. H. Shingle Company notified the plaintiffs that it would cease supplying heat to building "D" as of June 5, 1961, "unless a new heating agreement be entered into between Shingle and the plaintiffs." The plaintiffs, however, refused to negotiate a new steam contract and decided to install their own boiler. The plaintiffs, after acquiring a "deed of easement" from Proof, Incorporated,[2] the owner of building "L," installed a heating plant therein at a cost of $18,590.

"After tabulating . . . [the] costs for the construction of said heating plant, the plaintiffs deducted the sum of Ten Thousand ($10,000.00) Dollars from . . . [the] mortgage . . . contending that this was in accordance with the terms of the purchase and sale agreement, deed and purchase money mortgage."

The plaintiffs, in essence, contend that "[u]nder a reasonable and equitable construction of the documents in issue . . . [they are] entitled to be reimbursed by the defendant for one-half the expense of installation of the heating plant." They argue that the defendant agreed to furnish the plaintiffs with steam at a fixed price and that in the event of a breach by the defendant, the plaintiffs could build a heating plant "for" building "D" and deduct an amount not in excess of $10,000 from the purchase money mortgage as liquidated damages. We do not agree.

The language of the documents involved is explicit. The plaintiffs can deduct one half the cost of installing a heating plant, *only* "[i]n the event . . . [the plaintiffs install such]

---

[2] All the capital stock of Proof, Incorporated, was owned by one of the plaintiffs, I. Robert Freelander.

plant on the premises of Building 'D,' for which this purchase money, note and mortgage is given." There is nothing ·ambiguous in this language and the court cannot subvert its plain meaning. Unless the heating plant was constructed "on the premises" of building "D," the plaintiffs cannot be recompensed. "The construction of such a contract presents a question of law for the court." *Governor Apartments, Inc.* v. *Carney*, 342 Mass. 351, 354. There is no ambiguity in the contract and "[i]t must be enforced according to its terms." (*Sherman* v. *Employers' Liab. Assur. Corp. Ltd.* 343 Mass. 354, 356.) We do not believe that the "equitable construction of the documents" urged by the plaintiffs is here applicable.

In view of our determination of the above issue we need not treat with the plaintiffs' other contentions.

*Decree affirmed with costs of appeal.*