**In re DORAND, INC., Debtor.**

**CRJ INVESTMENTS, Plaintiff,**

v.

**Joan FEENEY, Trustee of Dorand, Inc., Defendant.**

**Bankruptcy No. 81–808HL. Adv. No. A81–1046.**

United States Bankruptcy Court, D. Massachusetts.

March 19, 1982.

**60**

Susan S. Dunn, & John C. Hutchins, Warner & Stackpole, Boston, Mass., for plaintiff.

Joseph Ryan, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for defendant.

Joan Feeney, Atty. at Law, Feeney & Freeley, Boston, Mass., trustee.

Robert Quinn, Haufler Assoc., Norwell, Mass., for debtor.

## MEMORANDUM ON REQUEST FOR RECONSIDERATION

HAROLD LAVIEN, Bankruptcy Judge.

This matter was first heard on January 18, 1982, pursuant to Plaintiff/Landlord's complaint and request for relief from stay. CRJ Investments (CRJ) became the Landlord of the Debtor when it purchased the building from Thomas A. Diab in April, 1981, and took an assignment of the Lease. In paragraph 7(a) of its complaint, CRJ alleged that it was owed additional rent from the Debtor under the tax escalation clause of the lease. The Trustee, as successor in interest to the Lease of the Debtor, denied that any additional rent was due and counterclaimed for the Debtor's share of the real estate tax abatements allegedly due pursuant to § 5 of the Lease.

The issue before the Court was the interpretation of § 5 of the Lease which provides, in pertinent part:

> TAXES: (a) If, in any tax year commencing with the year 1976, the real estate taxes on the land and buildings of which the demised premises are a part are in excess of the amount of the real estate taxes thereon for the year 1975, Lessee will pay to Lessor as additional rent hereunder, when and as designated by notice in writing by the Lessor, seven (7%) percent of such excess that may occur in each year of the term of this lease, or any extension or renewal thereof and proportionately for any part of a calendar year. Should the Lessor obtain an abatement of the real estate tax levied on the whole of the real estate of which the demised premises is a part, a proportionate share of such abatement, less reasonable attorney's fees, if any shall be refunded to said Lessee.

The Landlord claimed that "real estate taxes ... for the year 1975" should be interpreted to mean the real estate taxes after abatement not as assessed.[1] The Trustee claimed that the clause meant taxes as assessed.[2]

---

1. If so, then giving the unambiguous words used by the Landlord in the second sentence of § 5 their natural meaning, *Commonwealth v. Gove*, 366 Mass. 351, 354, 320 N.E.2d 900 (1974), *see* Mass.Gen.Laws ch. 4, § 6. Third, the tenant is then entitled to his share of the 1976 abatements amounting to $5,418.52.

Where the wording of the contract is unambiguous the contract must be enforced according to its terms, *Freelander v. G. & K. Realty Corp.*, 357 Mass. 512, 516, 258 N.E.2d 786 (1970).

2. The taxes originally assessed for 1975 were $236,669.44. Subsequently, an abatement in the gross amount of $116,053.00 was granted.

An evidentiary hearing was held on January 18, 1982.

Under Massachusetts law, interpretation of a contract is ordinarily a question of law for the court. *Freelander v. G. & K. Realty Corp.,* 357 Mass. 512, 516, 258 N.E.2d 786 (1970). The circumstances surrounding the making of the agreement must be examined to determine the objective intent of the parties. *Louis Stoico, Inc. v. Colonial Development Corp.,* 369 Mass. 898, 902, 343 N.E.2d 872 (1976). Where the wording of the contract is unambiguous, the contract must be enforced according to its terms. *Freelander v. G. & K. Realty Corp.,* 357 Mass. at 516, 258 N.E.2d 786. It is only where the contract contains ambiguities that a question of fact for the jury is presented. *Trafton v. Custeau,* 338 Mass. 305, 307–08, 155 N.E.2d 159 (1959); *Gillentine v. McKeand,* 426 F.2d 717, 721 (1st Cir. 1970). *Edmonds v. United States,* 642 F.2d 877, 881 (1st Cir. 1981).

After hearing further evidence, the Court determined that the clause was to be interpreted to mean real estate taxes as assessed. The Court then ordered the parties to determine the correct amounts of rent due.

This Motion for Reconsideration was filed on February 18, 1982. In its request for reconsideration, Plaintiff states that Massachusetts law, which governs the construction of the lease, requires a finding that the term "real estate taxes" in the tax escalation clause means the net real estate taxes after abatement. A hearing on the Motion to Reconsider was held on February 19, 1982, and Supplemental Memorandum were filed by both parties.

The Landlord cites for support the case of *George H. Dean Co. v. John C. Pappas,* 13 Mass.App. 55, 430 N.E.2d 836 (1982) which states that the term "real estate taxes ... for ... [the] base ... year ..." in a tax escalator clause means the taxes as assessed after abatement. The case goes on to state that "If parties intend to base their tax escalator computations on unabated taxes it will be necessary for them to say so unmistakably." *Id.,* at 58, 430 N.E.2d 836. The case relies on two other Massachusetts cases which are both rescript opinions, *Thorner v. Stone,* 357 Mass. 782, 260 N.E.2d 172 (1970), and *Yaffe v. S. S. Pierce Co.,* 3 Mass.App. 792, 338 N.E.2d 358 (1975). It is basic that under the *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) doctrine a federal court must follow the state law.

■ While the decision of the lower state court is entitled to some weight, the decision is not controlling where the highest court of the state has not spoken on the point. *Commissioner of Internal Revenue Service v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). The interpretation of the intermediate appellate state court should not be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise on the specific issues before it. *Id., West v. A. T. & T. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). In this Court's view, the terms of § 5 of the Lease are clear and unambiguous. The second sentence is either superfluous[3] or can only mean that the term "real estate taxes" as used in this section means the original assessed taxes because the draftsman added the second sentence which shows an awareness of po-

---

After deducting attorneys' fees of $38,645.65 for obtaining the abatement, the net abatement for 1975 was $77,407.35 resulting in a net tax after abatement of $159,262.09. Therefore, under CRJ's interpretation of § 5 the taxes for the base year of 1975 would be $159,262.09 whereas under the Trustee's interpretation the base year tax would be $236,669.44. The lower the base year tax, the higher the potential liability of the tenant under the tax escalation clause.

**3.** The Landlord's brief concedes that its interpretation so requires. This is contra to the well established precedent that all words should be given their usual and natural meaning. *Commonwealth v. Gove,* 366 Mass. 351, 354, 320 N.E.2d 900 (1974), see Mass.Gen.Laws ch. 4, § 6, Third; *National Shawmut Bank v. Joy,* 315 Mass. 457, 466, 53 N.E.2d 113 (1944). While, of course, the fetish of literal construction should not be allowed to produce an absurd result, that is not a present danger. In fact, the very opposite may be true.

tential abatements, the effect of any abatements and indicates an intention and ability to deal with abatements in express language.

The Landlord originally claimed the section was ambiguous and offered evidence of intent, something apparently sanctioned by the original Supreme Judicial Court rescript decision on a similar clause stating that "the language . . . required clarification and that such clarification was provided by consideration of the subsequent conduct of the parties", *Thorner v. Stone*, 357 Mass. 782, 260 N.E.2d 172 (1970). In the instant case, the unconverted evidence was that every six months from the commencement of the lease in February, 1976 through 1980, the tenant was billed for increases in taxes based on the 1975 assessed rate by a secretary who billed all the tenants and apparently only made a mistake, according to Mr. Diab, the original Landlord, in this one case.[4] The original Landlord only sought to charge using the lower base year formula in 1981 when the tenant demanded a credit for the abatements. The tenant's previous requests had been ignored. However, prior to the last request the tenant went to city hall himself and obtained, to support his demand, a record of the abatements that had been granted so that the Landlord could no longer rely on his earlier excuse that nothing was due because there was a wash in debits and credits.

"There is no surer way to find out what the parties meant, than to see what they have done." *Pittsfield and Northern Adams R. R. Corp. v. Boston and Albany R. R. Co.*, 260 Mass. 390, 398, 157 N.E. 611 (1927).

■ The Motion for Reconsideration was based on Massachusetts case law that had not been presented to this Court at the trial, on a recent Massachusetts Appellate Court decision and what that opinion describes without explaining as the "economic realities." That opinion came down almost simultaneously with this Court's opinion and appears to come to the opposite conclusion. That decision relies on the two earlier

rescript opinions. It seems to this Court that the *Dean* case is not controlling as it is readily distinguishable and that the broad brush encompassed by the words, "If parties intended to base their tax escalator computation on unabated taxes it will be necessary for them to say so unmistakably" may be in part dicta and in part based on the language in that case which did not provide for abatements. Our tax clause explicitly provides for the treatment of abatements. Further, since I find the clause is not ambiguous, it does unmistakably provide that the base year will be the unabated tax as assessed. If any lingering doubt remains, it should be pointed out that the contract was drawn by the Landlord of a large commercial building dealing with a small tenant whose share of the taxes was only seven (7%) percent and, certainly, the Court has an obligation to construe any doubt against the author. *Ferber Co. v. Ondrick*, 310 F.2d 462 (1st Cir. 1962) cert. denied, 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412; *Bay State Smelting Co. v. Ferric Industries, Inc.*, 292 F.2d 96 (1st Cir. 1961).

Tax escalation clauses like other provisions in ever popular net leases have a readily understandable purpose, the so-called "economic reality". I have asked both sides to additionally brief this one issue. I am satisfied that while the parties can negotiate any deal they desire that normal logic favors the certainty of the assessed tax of the base year, and if the Landlord has any reason for wanting something different, he should make that intent clear and specific. The Landlord, in renting space, seeks to total his costs, determine the profit he wants, or at least the profit he can get under prevailing market conditions, and insure that profit by having the tenant assume as many of the potential increased costs as he can get the tenant to assume. The tenant for his part determines what he is willing to pay and seeks some certainty as to any increases. Where taxes are concerned, the use of the taxes presently assessed and not yet abated guarantees that

---

4. The secretary did not testify.

both sides are dealing with a certainty. The Landlord knows his return will not be reduced by any increased assessments whether or not he can successfully get an abatement so his risk is removed. The tenant knows that there may be increases and abatements, but any increases will not be subject to an unpredictable base year abatement. Separate and apart from this first step in the tax escalation clause which provides both sides with some certainty comes the second step which determines how abatements will be handled. The parties are free to bargain for the application of abatements in the base year, only in subsequent years, only in excess of the base amount or not at all.

It would appear that the reason for the *Dean* result was the absence of an abatement provision. Here, we have a very specific abatement provision. Section 5 provides an unlimited right in the tenant to share in any abatements. Bearing in mind the object of the tax escalation clause—to protect the Landlord against loss of profit because of a tax change—he also should not, under this clause, be entitled to tax windfall.[5] The tax clause was based on the assessed tax for 1975. The tenant did not occupy until February, 1976, prior to any

abatements. If the Lease is read to provide for the base year to be the abated tax, then under the tax clause's second sentence, the tenant's base rent for the term should be reduced by his proportionate share of the seven (7%) percent abatement. However, if the words are read giving them their natural meaning, as I find the parties then intended under *Thorner v. Stone*, 357 Mass. 782, 260 N.E.2d 172 (1970), the tenant is entitled to his seven (7%) percent of all abatements from 1976 on. Otherwise, the Landlord would not only be guaranteed his profit as was intended, he would be making an extra profit on the taxes which was not intended.

The other rescript opinion cited by the court in *Dean* was *Yaffe v. S. S. Pierce Co.*, 3 Mass.App. 792, 338 N.E.2d 358 (1975). The trial court was presented only two alternatives and chose the one that favored the Landlord rather than the one that favored the tenant, but did not consider the analysis made in this opinion on the specific language of this Lease which produces a result fair to both Landlord and tenant. How the court might have ruled on this Lease and this analysis has not been decided prior to this opinion.

---

**5.** The use of actual numbers illustrates the practicality of this analysis.

The following chart uses the 1975 base year and the tax year 1978 to illustrate (cents omitted):

|  | 1975 | 1978 |
|---|---|---|
| TAXES ACTUALLY ASSESSED AND PAID | $236,669. | $304,289. |
| ABATEMENT AFTER DEDUCTING COSTS AND ATTORNEYS' FEES | 77,407. | 59,039. |
| NET TAX AFTER ABATEMENT | $159,262. | $245,250. |

(1) Dorand was originally billed for taxes based upon the difference between the assessed taxes in 1975 and the assessed taxes of 1978, namely, $67,720 of which Dorand's proportionate share is seven (7%) percent, or $4,733.

(2) According to the second sentence of paragraph 5, Dorand is entitled to seven (7%) percent of the 1978 abatement of $59,039., or $4,113.

Therefore, Dorand would have paid $4,733 to cover the increase in taxes and should then be refunded $4,133, its share of what the Landlord received as an abatement. This

would be a fair result because, although the Landlord's tax cost increased by $67,720, he subsequently received an abatement of $59,039 so his net actual increase in tax costs for 1978 was $8,681 for the entire building.

(3) Under the Landlord's theory, Dorand would be required to pay on the difference between the net tax in 1975 and the net tax in 1978, which is $85,988. Dorand's share of seven (7%) percent would mean an increase in the tax due of $6,019. This would obviously result in a windfall to the Landlord since his net tax increase on the whole building was only $8,681 and only approximately $600 on Dorand's seven (7%) percent. It was certainly not the intent of the parties for the Landlord to pay any tax increase but neither was it the intention of the parties for the Landlord to make a profit on the taxes. It should be noted that in any event, the Landlord would benefit from the use of the tenant's money since he would, in the first instance, receive the proportionate share of the increase on the assessed amount and only some time later repay the tenant his share of the abatement, interest free.

Plaintiff's Motion to Reconsider is denied. Judgment stands for the Trustee in the amount of $12,398.28 which is the Debtor's share of the abatements granted for fiscal years 1977 to 1979.[6]

---

**6.** This amount is somewhat less than computations under the Court's analysis would produce, however, this is the amount stipulated to by the parties in a stipulation filed January 26, 1982. *See* footnote 1.