Houston, J.
INTRODUCTION
The plaintiffs, Natick Village Condominium Trust, Deerfield Forest Condominium Trust, and KCN Condominium Trust, as owner of Kendall Crossing (collectively “the plaintiffs”), brought this action against the defendants, Town of Natick and the Town of Natick Board of Selectmen (collectively “the defendants”), for an alleged breach of contract. The plaintiffs maintain that the defendants failed to honor their contractual obligation to provide solid waste removal services (Count I) and that their abrogation of these responsibilities has unjustly enriched the defendants (Count III).[3] The plaintiffs have moved for summary judgment on these two counts, arguing that no genuine issues of material fact exist as to the defendants’ obligation to provide trash removal services. The defendants have cross moved for summary judgment arguing that they are bound by neither contractual duty nor municipal obligation to provide solid waste removal services to the plaintiffs. For the following stated reasons, the court DENIES the plaintiffs’ motion for summary judgment and ALLOWS the defendants’ cross motion for summary judgment.
BACKGROUND
The plaintiffs’ structures, common areas, and land are located in Planned Cluster Developments in Na-tick, Massachusetts.[4] On or about June 17, 1969, the original developer of the Planned Cluster Development, Lincoln-Boston Company (“Lincoln-Boston"), entered into an agreement (“the Agreement”) with the Town of Natick (“the Town”). Under the Agreement, the developer and all successors in interest were to provide waste removal services for six successive five-year periods (thirty years in total). The Agreement could be renewed at the option of the Town, “exercisable by written notice from Natick’s Board of Selectmen . . . with respect to each five (5) year renewal period . . .” On April 15, 1974, the Town exercised its option to renew and the Natick Board of Selectmen (“the Board”) notified Lincoln-Boston, in writing, that it was renewing the Agreement. At the end of this five-year period, the Agreement was never formally renewed again. The plaintiffs, relying on the 1974 renewal, assumed that the defendants intended to renew the Agreement in practice in 1979, 1984, 1989, and 1994.[5] Accordingly, the plaintiffs continued to pay for private rubbish removal services from 1979.[6]
In 1998, prior to the alleged expiration of the Agreement, the plaintiffs initiated dialogue with the defendants regarding garbage collection responsibilities. On January 30, 1998, the plaintiffs forwarded correspondence to the defendants regarding the Agreement’s termination and advising the Town that responsibility for solid waste removal would revert to the defendants after June 17, 1999. The Town hired a consultant to review the plaintiffs’ prior costs for trash removal and to prepare a public bid. The Town approved the Department of Public Works’ budget proposal, which included $170,000.00 allotted for removing garbage from the plaintiffs’ property.[7] The defendants subsequently received at least two offers below the allotted bid amount.
On June 22, 1999, the Town first notified the plaintiffs that the matter had been placed on the Board’s agenda for the July 1999 meeting.[8] The defendants have yet to accept a bid or facilitate the transition of garbage removal responsibilities from the plaintiffs to the defendants. The plaintiffs continue to privately pay the costs of waste removal, which they approximate at $130,000 per year.[9]
The Town of Natick Rubbish Collection Policy (“the Policy”) went into effect February 2,2000. In paragraphs 1 and 2, the Policy provides for curbside pick-up at all single-family residences and any residential building containing four or fewer residential units. The Policy also contains a grandfather provision which provides that the ‘Town will continue to collect trash and rubbish from properties at which it did pick up trash and rubbish as of January 1, 2000 but which do not conform to the standards of section 1 and 2 . . .” Paragraph 5 upholds any “current ZBA or Planning Board requirements or conditions, either by decision or agreement, relating to trash and rubbish collection ...”
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. *478 56(c). The burden rests with the moving party to demonstrate the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by either submitting affirmative evidence that negates an essential element of the nonmoving party’s case, or by showing that the nonmoving party lacks a reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The party opposing the motion must respond with evidence of specific facts that establish the existence of a genuine dispute. Pederson, 404 Mass. at 17.
The Agreement’s Expiration Date
The court’s first focus is determining when the Agreement expired. The plaintiffs argue that the defendants renewed the Agreement for all five of the five-year renewal periods and were under a contractual obligation to provide waste removal services from July 17, 1999 (when the plaintiffs allege the Agreement expired) through the present. Further, the plaintiffs maintain that at the time the Agreement was entered into, it was the intent of the parties that the defendants would assume the trash removal responsibilities after the Agreement’s expiration. The defendants assert that the Agreement actually expired in 1979. Even accepting the plaintiffs’ version of the expiration date, the defendants argue that no residual agreement, express or otherwise, existed that the Town would start providing removal services to the plaintiffs.
The interpretation of a contract is normally a question of law. Suffolk Const. Co., Inc. v. Lanco Scaffolding Co., Inc., 47 Mass.App.Ct. 726, 729 (1999). Contracts that are free from ambiguity are to be interpreted according to their plain terms. See Freelander v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970). In interpreting a contract, the court must construe all words that are plain and free from ambiguity according to their usual and ordinary meaning. Massachusetts Mun. Wholesale Elec. Co. v. City of Springfield, 49 Mass.App.Ct. 108, 111 (2000).
In the Agreement, the provision regarding expiration and the renewal process expressly stated that the Town’s option to renew would be “exercisable by written notice from Natick’s Board of Selectmen . . . with respect to each five (5) year renewal period ...” The court finds this language clear and unambiguous. In 1974, the defendants exercised the option to renew the Agreement for an additional five-year period. The renewal was sent to Lincoln-Boston, in writing, pursuant to the relevant portion of the Agreement. After 1974, no other written renewal was offered by the defendants. The plaintiffs concede this fact, and yet contend that the defendants intended, and in fact did, in practice, exercise their option to renew the Agreement in 1979, 1984, 1989, and 1994. The plaintiffs regarded the defendants’ failure to officially renew the Agreement as an oversight and not a release of the option. A one-time renewal does not establish a sufficient course of conduct. Accordingly, the court finds that the Agreement expired in 1979, as opposed to 1999.
The Defendants’ Contractual and/or Municipal Obligations
In ruling that the Agreement expired in 1979, the court now must determine what, if any, obligation the defendants may have had to the plaintiffs to provide trash removal services. The plaintiffs argue that the defendants are bound by a contractual obligation upon the Agreement’s expiration. It is the plaintiffs’ contention that the intentions of the parties were clear as to the assumption of trash removal responsibilities once the Agreement expired.[10]
Parol evidence is a source for interpretation when contract terms are ambiguous. Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496 (1997). “Extrinsic evidence bearing upon the background and purpose of the parties, as well as their understanding of the meaning of particular language used in the contract, may be considered both in the construction of ambiguous contract language and in resolving uncertainties in applying the terms of the written contract to the subject matter.” USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116 (1989). Even if the court considers all of the facts and circumstances surrounding the execution of the Agreement, “the words themselves remain the most important evidence of intention.” Robert Indus., Inc. v. Spence, 362 Mass. 751, 755 (1973). Neither the Agreement’s language itself nor its inherent purpose indicated that the defendants would take on the garbage removal duties upon its expiration. Further, the provision regarding waste removal was merely a part of the whole Agreement and was not the only basis for ratifying the Agreement. The court does not find that the Agreement is ambiguous and accordingly does not find it necessary to admit parol evidence as to the intent of the parties.
In addition, the defendants are under no affirmative municipal obligation to provide solid waste removal services to the plaintiffs. There is no law in the Commonwealth that requires a municipality to provide waste collection services for its citizens. The General Laws, however, do permit a municipality to create its own bylaws regarding the removal of garbage. Specifically, the “(b]oards of health [of municipalities] shall, from time to time, make rules and regulations for the control of the removal, transportation or disposal of garbage, offal or other offensive substances.” G.L.c. 111, §3IB.
Neither party has submitted any evidence to the court that would affirmatively demonstrate that the *479 defendants were under a legal obligation to provide waste collection services from 1979 through the implementation of the Policy in 2000. Moreover, there is nothing to suggest that before 2000 a different waste removal scheme was in effect that mandated the defendants to collect and remove garbage from complexes exceeding four units. Accordingly, the court finds that the defendants were under no legal obligation to provide solid waste removal services to the plaintiffs upon the expiration of the Agreement in 1979.
ORDER
It is therefore ORDERED that the plaintiffs’ motion for summary judgment be DENIED and the defendants’ cross motion for summaiy judgment be ALLOWED.

Count II alleges violation of the equal protection clause.

Natick Condominium Trust is a development located at 18 Village Way and consists of 816 one- and two-bedroom residential condominium units. Deerfield Forest Condominium Trust is located at 1 Walden Drive and is comprised of 334 one- and two-bedroom units. KCN Realty Trust, the owner of Kendall Crossing, is aresidential apartment complex at 182 West Central Street consisting of 354 one- and two-bedroom units.

The basis for the plaintiffs’ assumption was the alleged intention of all parties involved in the negotiation and ratification of the Agreement. The plaintiffs maintain that at the time the Agreement was entered into, all parties understood that after thirty years (assuming that the defendants exercised all their options to renew) the defendants would assume the trash removal responsibilities. The plaintiffs rely on the sworn affidavit of Lee Romanov, attorney for Lincoln-Boston at the time the Agreement was entered into, as support for this assertion.

The defendants dispute this characterization of the events and further argue that the plaintiffs’ assumptions are not sufficient to bind the defendants.

These allocated funds included the removal and disposal of all solid waste from the plaintiffs’ properties, in addition to three other condominium and apartment complexes in Na-tick. These other complexes are not parties to this litigation.

The Board of Selectmen repeatedly rescheduled the vote on the contract, placing it on its agenda for a vote on several occasions in June, July, and August 1999.

defendants accept this figure for liability purposes only, but allege they lack sufficient knowledge to either admit to or deny the costs of rubbish removal services.

The plaintiffs rely on the sworn affidavit of Romanov as support for their assertion.