## METROPOLITAN CREDIT UNION *vs.* RAYMOND MATTHES & another.[1]

No. 96-P-1306.

Essex. February 18, 1998. - February 16, 1999.

Present: GREENBERG, LAURENCE, & BECK, JJ.

*Summary Process. Practice, Civil,* Summary judgment, Stipulation. *Mortgage,* Foreclosure, Partial release. *Contract,* Performance and breach. *Tender. Frauds, Statute of.*

A stipulation, entered into by a mortgagee and two mortgagors in resolution of a motion for relief from stay in a bankruptcy proceeding, which provided that the mortgagee could conduct a foreclosure sale of the property in question under certain conditions, operated to bar the mortgagors' claims contesting the validity of the foreclosure sale in a subsequent summary process action. [330-332]

In a summary process action brought by a credit union, a former mortgagee which had purchased the property in question at a foreclosure sale, the trial judge correctly granted summary judgment in favor of the credit union on the defendants' counterclaims for breach of contract, wrongful foreclosure, and violation of G. L. c. 93A, where the defendants, the former mortgagors, demonstrated no reasonable expectation of proving that the credit union breached the mortgage agreement in acquiring title to the property. [332-334]

An oral agreement by a credit union for a partial release of a mortgage in default was unenforceable under the Statute of Frauds and common law. [334]

COMPLAINT for summary process filed in the Lawrence Division of the District Court Department on August 23, 1994.

After transfer to the Northeast Division of the Housing Court Department, and subsequent transfer to the Superior Court Department, the case was heard by *David D. Kerman,* J., sitting under statutory authority, on motions for summary judgment; a motion for reconsideration was heard by him.

*Michael J. Conley* for the defendants.
*Jeffrey J. Phillips* for the plaintiff.

[1]Sherry Matthes.

BECK, J. The defendants, Raymond and Sherry Matthes, who are husband and wife, appeal from a judgment of summary process for the plaintiff, Metropolitan Credit Union (Credit Union), pursuant to the Credit Union's motion for summary judgment. The Housing Court judge, sitting in Superior Court, also granted the Credit Union's motion for summary judgment on the Mattheses' counterclaims for breach of contract, wrongful foreclosure, and violation of G. L. c. 93A.

1. *Factual background.* The undisputed but convoluted facts are as follows. In November, 1987, Raymond and Sherry Matthes obtained a $25,000 line of credit at the Credit Union, secured by a revolving credit second mortgage on their house. The Mattheses intended to use the borrowed funds to reconfigure the lot containing their house and two adjacent lots they had recently purchased to create two new buildable lots, in addition to their house lot. Within a month of signing the mortgage agreement, the Mattheses used up the entire line of credit. Their subsequent interest payments were irregular and consistently late.

By July, 1992, the Mattheses had reconfigured the lots and sought a partial release of the mortgage on their house lot in order to sell the two newly configured lots. They planned to use the proceeds from the sale of the two new lots to bring the first and second mortgages on their house lot current and to pay off Internal Revenue Service (IRS) liens. The Credit Union placed conditions on a possible partial release, two of which required that the Mattheses pay the arrearages on the existing mortgage and pay all legal fees the Credit Union incurred concerning the partial release. The Mattheses did not agree to these conditions, and the Credit Union did not provide the release. Without the release, the Mattheses could not deliver clear title and the proposed sale fell through.

Within a few months, on December 21, 1992, the Credit Union issued a notice of default of $944.21 to the Mattheses and gave them thirty days to cure as provided in the mortgage. The Mattheses did not make a timely response to the notice, and so, on February 12, 1993, the Credit Union filed a complaint for foreclosure. By March 30, 1993, the Mattheses owed $1,608.70 in back interest and $5,293.84 in legal fees and costs associated with the foreclosure. In March and April of 1993, there were telephone calls between counsel for the Mattheses and counsel for the Credit Union concerning various proposals

by the Mattheses to cure the default, several of which involved Sherry Matthes's uncle. Although arguably there is some dispute as to the substance of these proposals, there is no dispute that only one was in writing, and so far as can be determined from the record, it did not meet the conditions to cure the default. (The offer is not included in the record before us.) Indeed, counsel for the Mattheses acknowledges that he "do[es] not have any correspondence in [his] file regarding [the] offers."

On April 6, 1993, a Land Court judge entered judgment for the Credit Union on their foreclosure complaint. The Credit Union scheduled a foreclosure sale for April 14, 1993. On the morning of the sale, the Mattheses filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Massachusetts. The Credit Union filed a motion for relief from the automatic stay on May 24, 1993, which was continued by agreement when the Mattheses filed a voluntary conversion to a Chapter 13 wage earner plan pursuant to 11 U.S.C. § 706(a) (1994). On August 16, 1993, the Bankruptcy Court confirmed the Chapter 13 plan, which spread the Mattheses' payments on their arrearage to the Credit Union, as well as to two other creditors, over five years.

By February, 1994, the Mattheses were in default on their wage earner plan. The Credit Union moved again for relief from the bankruptcy stay on the ground that the sum of the mortgages and other liens on the property was greater than the value of the real estate. On the morning of the scheduled hearing on the Credit Union's motion for relief from stay, the parties submitted a stipulation, which the Bankruptcy Court judge entered as an order of the court. The stipulation allowed the Credit Union's motion for relief from the stay "in part," allowing them to "do all things necessary to set up a foreclosure sale" but prohibiting the scheduling of a sale until after May 19, 1994. In turn, the stipulation acknowledged the Mattheses' "represent[ation] that they [had] what they consider[ed] a 'live' offer for the sale of [their] property in an amount sufficient to pay [the Credit Union's] debt in full," and gave the Mattheses until the May date to sell the property.

When the Mattheses did not sell their property by the scheduled date, the Credit Union filed an affidavit of non-payment as provided by the stipulation, and the Bankruptcy Court allowed the Credit Union's motion for relief from the automatic stay. The Credit Union proceeded to foreclose on the

mortgage and purchased the property subject to the first mortgage on July 28, 1994.

2. *Prior proceedings.* The Credit Union filed a summary process complaint in District Court on August 23, 1994, when the Mattheses refused to leave the property after an August 1, 1994, notice to quit. After filing an answer, the Mattheses claimed a jury trial and noticed a transfer to the Housing Court. The Credit Union then filed a motion for summary judgment. Upon review of the papers, the Housing Court judge requested an assignment to the Superior Court, which was granted. See G. L. c. 211B, § 9; *Konstantopoulos* v. *Whately*, 384 Mass. 123, 129 (1981). The Mattheses then filed a counterclaim alleging breach of contract, wrongful foreclosure, and violation of G. L. c. 93A, and asking the court to set aside the foreclosure sale and to award damages, attorney's fees, and costs. In a one-paragraph order, the judge allowed the Credit Union's motions for summary judgment in the summary process action as well as on the Mattheses' counterclaim "for the reasons set forth in the plaintiff's memorandum . . . and for the additional reason that . . . the defendants stipulated and agreed in their bankruptcy proceeding . . . to a foreclosure and sale of the property."

The Mattheses moved for reconsideration of the judgment, claiming error in the judge's reliance on the stipulation. They argued that because the Credit Union had failed to raise the stipulation in its motion for summary judgment, they had no notice of the issue until oral argument on the motion. The judge allowed the Mattheses' motion for reconsideration, giving both sides the opportunity to address the issue, and then confirmed summary judgment for the Credit Union.

3. *Issues on appeal.* On appeal, the Mattheses in essence make the following arguments. (1) The motion judge should not have considered the bankruptcy stipulation because the Credit Union had not raised the issue, and in any case they had not waived their defenses to the foreclosure action by signing the stipulation, which was intended only as a response to the Credit Union's motion for relief from the Bankruptcy Court's automatic stay. (2) The Credit Union's refusal to allow them to cure was a breach of the mortgage contract; the breach rendered the foreclosure action wrongful; therefore, the Credit Union did not have legal title. (3) The Credit Union's oral agreement to grant a partial release was enforceable. (4) The Credit Union's

conduct violated G. L. c. 93A. For the reasons set out below, we affirm the judgment.

(*a*) *Summary judgment.* "The purpose of summary process is to enable the holder of the legal title [to real property] to gain possession of premises wrongfully withheld. Right to possession must be shown and legal title may be put in issue. Legal title is established in summary process by proof that the title was acquired strictly according to the power of sale provided in the mortgage; and that alone is subject to challenge. If there are other grounds to set aside the foreclosure the defendants must seek affirmative relief." *Wayne Inv. Corp.* v. *Abbott*, 350 Mass. 775, 775 (1966) (citation omitted). Thus, in order to prevail on its motion for summary judgment on the summary process complaint, the Credit Union had the burden of showing that there are no material facts in dispute regarding its legal title to the property. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). See *Sheehan Constr. Co.* v. *Dudley*, 299 Mass. 51, 53-54 (1937). Upon such a showing, the Mattheses "must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion." *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989).

On the other hand, "[a] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). Thus, as to the Credit Union's motion for summary judgment on the Mattheses' counterclaims, on which the Mattheses have the burden of proof, the Credit Union must show that the Mattheses have no reasonable expectation of proving each of their counterclaims. To withstand the motion, the Mattheses "must set[] forth specific facts showing that there is a genuine issue for trial." Mass.R. Civ.P. 56(e). See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. at 716.

(*b*) *The stipulation.* On the facts in this case, we conclude as a matter of law that the trial judge was correct in allowing the Credit Union's motions for summary judgment on the basis of the stipulation. While it is true that the Credit Union did not initially argue this point, the stipulation was an exhibit to an af-

fidavit attached to its memorandum in support of its motion for summary judgment, and the judge was entitled to take account of it, especially since he subsequently allowed the Mattheses' motion for reconsideration and gave the parties an opportunity to brief and argue the issue. See *Henshaw* v. *Cabeceiras*, 14 Mass. App. Ct. 225, 230 (1982).

The Mattheses claim that in signing the stipulation they did not waive their claims against the Credit Union and that the claims survive the stipulation. Because "the hearing on a motion for relief from stay in a Bankruptcy proceeding is meant to be a summary proceeding," *Grella* v. *Salem Five Cent Sav. Bank*, 42 F.3d 26, 31 (1st Cir. 1994), "most [Federal] courts [have found] that such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate." *Id.* at 32, 33. Thus, for example, in *Grella* v. *Salem Five Cent Sav. Bank*, the United States Court of Appeals for the First Circuit held that the bankruptcy trustee's later counterclaim in a separate proceeding on the bank's complaint for determination of its secured status was not barred, even though the trustee had not filed any objection to the bank's motion for relief from stay or even appeared at the hearing.

This rule does not apply, however, where the creditor and the debtor enter into a specific agreement in order to resolve a motion for relief from stay. See *In re Monument Record*, 71 B.R. 853, 864 (Bankr. M.D. Tenn. 1987), cited and distinguished from the general rule as to the binding effect of motions for relief from stay proceedings in *Grella* v. *Salem Five Cent Sav. Bank*, 42 F.3d at 35. Here, the stipulation, which the Bankruptcy Court judge entered in the record, clearly provides for foreclosure in the event that the Mattheses were unable to sell the property by May 19, 1994. "The stipulation should be construed 'in its natural sense.'. . . [I]f there is a 'plain, ordinary and proper meaning of a term,' that is evidence of the parties' intent in using the term. . . . If a contrary result had been intended, the [s]tipulation could have stated so without ambiguity." *In re Bolton Hall Nursing Home, Inc.*, 31 B.R. 765, 769 (Bankr. D. Mass. 1983) (citations omitted). "[A] party may not disregard a stipulation given by him nor can he revoke or escape from it at his will. His consent once made a part of the record, binds him until he is relieved from it by judicial action." *Kalika* v. *Munro*, 323 Mass. 542, 543 (1948). There has been no such relief here. See *Loring* v. *Mercier*, 318 Mass. 599, 600-601 (1945).

As the Bankruptcy Court for the District of Massachusetts has concluded, failure to enforce agreements such as the one at issue here "would negate the purpose for settlements. Parties would not settle cases if the matters at issue were not intended to fully and completely settle the merits of the controversy." *In re Willauer*, 192 B.R. 796, 800 (Bankr. D. Mass. 1996). "Such stipulations must be enforced because misfortune and other excuses are always possibilities and if used as a basis to ignore or avoid adequate protection stipulations, soon no creditor would be willing to enter into such an agreement to the eventual detriment to all [bankruptcy] debtors." *In re Polries*, 49 B.R. 669, 673 (Bankr. D.N.D. 1985). See *Aurea Aspasia Corp.* v. *Crosby*, 331 Mass. 515 (1954), in which the debtor signed a stipulation delaying proposed foreclosure sales to give him time to make payment. When he failed to make the necessary payment, he sought a further opportunity to redeem his mortgaged property. The Supreme Judicial Court rejected the debtor's claim to set aside the foreclosure sales. In words applicable here, the court said, "By that stipulation the plaintiff agreed that if the sum therein designated was not paid by [the date set], the foreclosure sales were to be held. . . . A stipulation is not lightly to be disregarded. . . . The plaintiff having sought and secured the postponements of the foreclosure sales, it is difficult to see any reason why it is not precluded from attacking them." *Id.* at 517. But even if the stipulation did not bar the Mattheses' counterclaims, none of them raises a genuine issue for trial.

(*c*) *Breach of contract and wrongful foreclosure: curing the default.* Paragraph 19 of the mortgage agreement sets out the terms under which a borrower may exercise his right to reinstate a mortgage: payment of all sums then due on the mortgage, as well as all reasonable expenses the lender has incurred in enforcing the mortgage, including costs and reasonable attorney's fees.

The Mattheses claim they have "produced ample evidence to establish that on two separate occasions [the Credit Union] refused a valid exercise of the right to cure." The first, involving the tender of a check for the amount of the arrearage only, clearly did not meet this requirement since the contract also requires payment of expenses. The Mattheses do not allege that the amount of the check covered the Credit Union's costs and attorney's fees.

The second involves the claim that counsel for the Mattheses

told counsel for the Credit Union in a telephone conversation that Sherry Matthes's uncle would pay $10,000, which was more than enough to cure the default. However, a telephone offer in the context of this case was not sufficient to cure. Compare *Ward* v. *Doucette*, 1 Mass. App. Ct. 842 (1973) (letter through counsel informing seller of land that buyer prepared to pay balance due did not constitute legal tender of payment). "To constitute a valid tender the money must be actually produced and offered to the person who is entitled to receive it. . . . There must be an actual production of the money unless such production be dispensed with by the declaration of the party to whom it is due that he will not receive it, or by some equivalent declaration or act. A mere offer to pay or a statement that the party has the money and is ready and willing to pay, without actual production of it, is not sufficient to constitute a valid tender." *Mondello* v. *Hanover Trust Co.*, 252 Mass. 563, 567 (1925).

The Mattheses claim that there is at least a material question of fact as to whether they were excused from making a formal tender because the Credit Union made it clear that they would accept nothing less than full payment of the mortgage loan balance. The evidence to support this argument is the statement of counsel for the Mattheses in an affidavit that counsel for the Credit Union "indicated that his client would accept nothing less than full payment of all principal, accumulated interest, and expenses." Even assuming that this statement is sufficiently specific to satisfy Mass.R.Civ.P. 56(e), despite the lack of any other documentary support, it is legally insufficient.

The Mattheses cite *Mayer* v. *Boston Metropolitan Airport, Inc.*, 355 Mass. 344 (1969), in support of their argument that tender would have been futile. However, although that case does stand for the proposition that "a tender of performance is not necessary 'if the other party has shown that he cannot or will not perform,' " *id.* at 354, *Mayer* is distinguishable. In that case, not only was there extensive correspondence between the parties illustrating the areas on which they disagreed, *id.* at 348, but the parties made actual tender with "minor defects" which the court found could be disregarded. *Id.* at 353-354. The question on appeal was whether the "substantive tender [of the plaintiff or the defendant] . . . was sufficient to cause non-acceptance of the tender by the other party to constitute a material breach of contract." *Id.* at 354. That is not the situation

here. Thus, even if the stipulation did not bar their counterclaims, the Mattheses have demonstrated no reasonable expectation of proving that the Credit Union breached the mortgage agreement in acquiring title to the Mattheses' property.

(*d*) *Breach of oral agreement: the partial release.* Even if the bank had made an oral agreement to grant a partial release as to the Mattheses' claim, the judge appropriately granted summary judgment on the Mattheses' claim that the Credit Union was required to grant their request for a partial release. There is no dispute that the alleged agreement to grant a partial release was not in writing. It was consequently unenforceable under the Statute of Frauds. G. L. c. 259, § 1. "Any oral agreement by the bank for partial releases in the negotiations that preceded the mortgages was not enforceable, for it was 'a contract for the sale of lands, tenements or hereditaments' or of some 'interest in or concerning them.' " *Duff* v. *United States Trust Co.*, 327 Mass. 17, 20 (1951) (citation omitted). Moreover, even if the agreement had been in writing, a partial release provision in a mortgage contract is unenforceable as a matter of law when the mortgage is in default. *Rhode Island Hosp. Trust Natl. Bank* v. *Post*, 27 Mass. App. Ct. 1207, 1208 (1989). There is no dispute here that at the time the Mattheses sought the partial release, they were in default on the mortgage.

In view of the analysis set forth above, there is clearly no merit to the Mattheses' claim of a G. L. c. 93A violation, or their argument about the implied covenant of good faith and fair dealing.

*Judgment affirmed.*