Kottmyer, J.
Plaintiff, Cummings Properties, LLC (“Cummings”), and defendant, Eaton Corporation (“Eaton”), have filed cross-motions for summary judgment on the issue of liability. This case arises out of the attempted exercise by Eaton of an option to terminate a lease. The issue presented is whether, as a matter of law, transmission by facsimile on September 30,1998, of written notice of cancellation and of a copy of a check was sufficient to exercise the option where the lease required service of notice “along with a simultaneous payment of $27,000 as a lease termination fee” on or before that date. For the reasons discussed below, I find that the option was not effectively exercised. Accordingly, Cummings’ motion for summary judgment on the issue of liability is ALLOWED and Eaton’s motion for summary judgment is DENIED.

SUMMARY JUDGMENT RECORD

The parties’ joint stipulation of facts establishes the following. Cummings is a corporation that leases property. On March 1, 1996, Cummings leased one of its commercial spaces located at 100 Cummings Center, Suite 407C, Beverly, Massachusetts, to Eaton pursuant to a written lease (“the Lease”). When the leasehold was about to expire, Cummings and Eaton discussed extending the term for a period of one year. Cummings informed Eaton that it could get a better rate for a two-year extension. Eaton was concerned about locking into a two-year term, so the parties negotiated an option to terminate which was incorporated in the *610 written extension (“the Extension”). Paragraph 7 of the Extension reads as follows:
♦Provided LESSEE is not then in default of this lease or in arrears of any rent or invoice payments, LESSEE shall have a one-time option to cancel this lease, for any reason or no reason at all, effective February 28, 1999 by serving LESSOR with written notice to that effect on or before September 30, 1998, along with a simultaneous payment of $27,000.00 as a lease termination fee. LESSEE shall also remain responsible for all damages to the leased premises in accordance with the lease and for rent and all other charges due under the lease, including without limitation utility charges and real estate tax increases, through the revised lease termination date. Time is of the essence.
(Emphasis supplied.) According to Paragraph 6 of the Extension, where there is any inconsistency between the Extension and the Lease, the terms of the Extension shall control. Paragraph 20 of the Lease contains a notice provision, which states:
20. Notice . . . Any notice from LESSEE to LESSOR relating to the leased premises or to the occupancy thereof shall be deemed duly served when served by constable, or delivered to LESSOR by certified mail, return receipt requested, postage prepaid, addressed to LESSOR at 20 West Cummings Park, Woburn, MA 01801 or at LESSOR’S last designated address. No oral notice or representation shall have any force or effect. Time is of the essence in service of any notice.
(Emphasis supplied.)
Before the Extension was executed, the parties negotiated the calendar date by which the option had to be exercised. Cummings proposed a date of August 30, 1998; Eaton proposed a date of December 1, 1998; the parties ultimately agreed that the option had to be exercised on or before September 30, 1998. Neither party has any recollection of discussing any other provisions of the termination option.
Eaton vacated the premises in mid-September 1998, and advised Cummings that the premises was ready for a new tenant. On September 29, 1998, An Eaton administrator called Cummings’ Beverly office and asked where the check and notice should be sent. She was told that they should be sent to Cummings’ Beverly office. On September 30, 1998, Eaton sent by facsimile a termination notice and a copy of a $27,000 check, the termination fee, to Cummings at 100 Cummings Center, Beverly, MA. On that date, Gerard McSweeney, General Manager of Cummings Center, received the facsimile transmission. In addition, on September 30, 1998, Eaton sent, by certified mail, the termination notice and a check in the amount of $27,000 to Cummings’ legal department. These documents were delivered on Monday, October 5, 1998.
On October 7, 1998, Cummings returned Eaton's check, stating that “[blecause Cummings Properties did not receive the purported cancellation notice ‘on or before September 30, 1998, along with a simultaneous payment of $27,000 as a lease termination fee’ it was both defective and untimely, and simply does not comply with the requirements of Lease Extension, Section 7 or the Notice provision of the lease itself.”
Eaton paid all rent and other charges due under the lease for the period through February 28, 1999. Eaton has not paid rent since February 28, 1999.

DISCUSSION

This court grants summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc. 404 Mass. 14, 17 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the motion].” Pederson v. Time Inc., 404 Mass. 14, 17 (1989); Madsen v. Erwin, 395 Mass. 715, 719 (1985).
An option to terminate a lease is a “conditional limitation” on a leasehold estate, by which the lessee can unilaterally terminate a lease. Loitherstein v. International Business Machines Corp., 11 Mass.App.Ct. 91, 94 (1980), app. denied, 383 Mass. 890 (1981). Termination options are strictly construed and an optionee seeking to exercise a termination option benefit, must strictly comply with the terms of the agreement. See id. “An option, being unilateral in its nature, and likely to be exercised when advantageous to the holder of the option and perhaps disadvantageous to the person subject to it, must be exercised, if it is exercised at all, by turning corners squarely.” Tristam’s Group, Inc. v. Morrow, 22 Mass.App.Ct. 980, 981 (1986). “[H]olding the possessor of a unilateral right of this sort to literal compliance with the requirements for its exercise enforces commercial certainty.” Loitherstein, supra, 11 Mass.App.Ct. at 94.
Pursuant to the terms of the agreement, Eaton had to fulfill two conditions to exercise the termination provision: (1) written notice served on or before September 30, 1998, that Eaton intended to terminate the lease, and (2) simultaneous payment of $27,000. On September 30th, Eaton sent copies of the notice and check to Cummings via facsimile transmission and certified mail. Cummings received a faxed copy of the documents on that date, but did not receive the mailed documents until October 5th, five days after the date specified in the agreement. Accordingly, the Court must first determine whether the faxed transmission *611 of the notice and check were sufficient to exercise the option under the lease.
To terminate the lease, Eaton was required to make a payment of a $27,000 lease termination fee. “To constitute a valid tender the money must be actually produced and offered to the person who is entitled to receive it . . . There must be an actual production of the money unless such production be dispensed with by the declaration of the party to whom it is due that he will not receive it, or by some equivalent declaration or act. A mere offer to pay or a statement that the party has the money and is ready and willing to pay, without actual production of it, is not sufficient to constitute a valid tender.” Metropolitan Credit Union v. Matthes, 46 Mass.App.Ct. 326, 333 (1999) (quoting Mondello v. Hanover Trust Co., 252 Mass. 563, 567 (1925)). “When payment is made by check, payment is effected ‘when the check is drawn on an account with sufficient funds to cover it at a solvent bank and is delivered to the payee.’ ” Goldman v. Peterson, 1997 Mass.App.Div. 189, 191 (and cases cited therein) (quoting First Nat'l Ins. Co. of America v. Commonwealth, 391 Mass. 321, 326-27 (1984) (granting creditor’s motion for summary judgment to collect accelerated amount due under promissory note because creditor did not receive installment payments made by check on or before the due dates in the note) (emphasis in original)).
A faxed copy of a check is not a negotiable instrument. The faxed copy of the check constituted, at best, evidence of an intention to pay, not payment. The court cannot rewrite the terms of an option to relieve an optionee from the consequences of its failure to adhere to the plain requirements of the option. See National Medical Care v. Zigelbaum, 18 Mass.App.Ct. 570, 575-76 (1984). Accordingly, the faxed copy of the check did not constitute payment as required by the option.
The Court next considers whether Eaton effectively exercised the option when it mailed the written notice and check to Cummings by certified mail on September 30, 1998. In the absence of governing language to the contrary, a termination option is effective only upon receipt of the required termination fee. Loitherstein, 11 Mass.App.Ct. at 94 (termination option ineffective where payment not received by date specified in option, even though notice had already been given). See Korey v. Sheff, 3 Mass.App.Ct. 266, 267 & n.5 (1976) (“timely notice of intent to exercise an option to renew is effective upon receipt of such notice”); 15 S. Williston, Contracts §46:12, at 445 (4th ed. 2000); Restatement (Second) of Contract §63 (1979) (unless the offer provides otherwise, an acceptance under an option contract is not operative until received by the offeror). “The power of termination of a contract . . . can be effectively exercised only by bringing home notice to the other party, not by merely mailing it.” A. Corbin, Contracts §11.8, at 526 (1996 & Sup. 2001). “Of course, it is possible in any case for the parties to agree that the mere mailing of a notice shall be sufficient; it is a question of interpretation whether they have in fact so agreed.” Id. Moreover, where an option requires that the option holder give ‘notice’ to the other party, such as here, such language suggests that the operative fact is the receipt. See McTernan v. LeTendre, 4 Mass.App.Ct. 502, 504 n.2 (1976).[1]
Here, the lease agreement contains no language inconsistent with the stated rule. On the contrary, Section 7 of the Extension requires service of the notice and payment by September 30, 1998, and Section 20 of the Lease deems notice duly served when “delivered” by certified mail. In addition, the Extension expressly provides that time is of the essence. Loitherstein, 11 Mass.App.Ct. at 95.
Consequently, although notice of termination was received by facsimile transmission on September 30, 1998, payment was not.[2] According to the terms of the option, Eaton was required to serve written notice by September 30, 1998, along with a simultaneous payment of $27,000. Payment was not tendered until its receipt on October 5th — beyond the terms of the agreement. See Loitherstein, 11 Mass.App.Ct. at 95 (option to terminate ineffective because payment not received by date specified in agreement). “(A]n option calling for notice and payment requires timely compliance with both conditions for its proper exercise.” Id. Because Eaton did not timely give notice and tender payment, it did not effectively exercise the termination option.
Finally, Eaton contends that equity demands that its attempted exercise of the option be honored as Cummings was not prejudiced by the delay in payment and did not notify Eaton of its failure to comply with the requirements of the option until October 7, 1998. However, “(a) party who stumbles in exercising an option is generally not entitled to equitable relief.” Loitherstein, 11 Mass.App.Ct. at 96. There may be cases where equitable considerations outweigh the interests of commercial certainty served by requiring strict adherence to the terms of an option. Eaton, a sophisticated commercial entity, has not adduced facts sufficient to warrant equitable intervention in the enforcement of the parties’ negotiated agreement.[3]
Cummings also seeks enforcement of Eaton’s agreement to pay “reasonable attorneys fees and/or administrative costs” incurred by Cummings in enforcing any or all of the obligations under the lease. Agreements to compensate an opposing party for attorneys fees are routinely enforced. Carter v. Warren Five Cents Savings Bank, 409 Mass. 73, 80 (1991). Paragraph 19 of the Lease provides: “[L]essee agrees to pay reasonable attorneys fees and/or administrative costs incurred by lessor in enforcing any or all obligations of the lessee under this lease at any time.” Thus, Cummings is entitled to recover its reasonable attorneys fees and costs. In addition, Paragraph 19 also specifies that the “lessee shall pay lessor interest *612 at the rate of eighteen (18) percent per annum on any payment from lessee to lessor which is past due.” Given the absence of a showing of unconscionability or unequal bargaining power, Cummings is entitled to interest at the rate of 18 percent per annum on all past due payments. See G.L.c. 261, §8.

ORDER

For the foregoing reasons, it is hereby ORDERED that Cummings’s motion for summary judgment on the issue of liability is ALLOWED and Eaton’s motion for summary judgment is DENIED. Judgment shall enter as follows: 1) Eaton Corporation is liable to Cummings Properties, Inc., for breach of the lease; 2) Eaton Corporation is liable to Cummings Properties, Inc., for Cummings reasonable attorneys fees and costs incurred by Cummings in enforcing the lease; and, 3) Cummings Properties, Inc. is entitled to interest on overdue lease payments at the contract rate of 18%.

 Eaton relies on McTernan for the proposition that the acceptance of an option-offer is effective upon posting. In that case, the contract stated that the “option maybe accepted .. . within 60 days," indicating that the option could be exercised in accordance with the general rules governing acceptance of offers — and not those applying to options. The Court’s holding is therefore inapposite. Gerson Realty Inc. v. Casaly, 2 Mass.App.Ct. 875 (1974), is also inapposite. In Gerson, the court held that an option to renew was effectively exercised where the optionee sent notice by certified mail despite the fact that the lease specified that notice shall be sent by registered mail. Id. Essentially, certified mail was held the functional equivalent of registered mail. The question, here, is not whether the mode of transmission was appropriate; rather, was the payment received with the agreed-upon time period. The rationale behind Gerson does not apply.

 Cummings argues that the faxed notice was ineffective because it was not delivered in accordance to the lease agreement. Paragraph 20 provides in pertinent part: “notice . . . shall be deemed duly served when served by constable, or delivered to LESSOR by certified mail, return receipt requested, postage prepaid, addressed to LESSOR at 20 West Cummings Park, Woburn, MA 01801 or at LESSOR’S last designated address.” This provision does not require adherence to the specified methods of notice to the exclusion of other modes of transmission which result in actual delivery of written notice and payment by the required date. Had Eaton delivered the check in hand to Cummings on September 30, 1998, it would, in my view, have effectively exercised the option. See Korey, 3 Mass.App.Ct. at 267-68 (lease provision stating that “any such notice to the Lessor shall ... be deemed duly given if and when mailed by registered mail” did not require that written notice be sent by registered mail, to exclusion of other modes of transmission).

 The fact that Cummings knew that Eaton intended to exercise the option and that a Cummings representative responded to a telephonic inquiry as to where the notice and check should be sent is not an adequate basis for equitable intervention where there is no evidence that any Cummings representative misled Eaton as to Eaton’s obligation to comply with the terms of the option.