**Erica J. WILDER, for herself
and all others similarly
situated, Plaintiff,**

v.

**TOYOTA FINANCIAL SERVICES AMERICAS CORPORATION, Toyota Motor Credit Corporation, Defendants.**

**Civil Action No. 10–10365–PBS.**

United States District Court,
D. Massachusetts.

Feb. 9, 2011.

---

Walter H. Jacobs, J.D. Attorney at Law, North Andover, MA, for Plaintiff.

Anna S. McLean, Molly R. Newland, Sheppard Mullin Richte & Hampton LLP, San Francisco, CA, Peter B. Moores, E. Macey Russell, Courtney M. Schou, Choate, Hall & Stewart LLP, Boston, MA, for Defendants.

## ORDER

PATTI B. SARIS, District Judge.

Denied. "I adopt the report and recommendation of the Magistrate Judge. The parties shall complete discovery by 7/30/2011. Any motions for summary judgment shall be filed by 8/30/2011."

## REPORT AND RECOMMENDATION ON DEFENDANTS TOYOTA FINANCIAL SERVICES AMERICAS CORPORATION AND TOYOTA MOTOR CREDIT CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (# 18)

COLLINGS, United States Magistrate Judge.

### I. Introduction

This action arises out of the defendants' repossession of the plaintiff's car after the plaintiff defaulted on her car loan. The plaintiff Erica J. Wilder ("Wilder") originally filed her Complaint (# 1 Exh. A) in Massachusetts Superior Court alleging, inter alia, breach of contract and fraud, and seeking class action status for herself and all others similarly situated against Toyota Financial Services Americas Corporation ("TFS") and Toyota Motor Credit Corporation ("TMCC") (collectively "the defendants"). On March 1, 2010, the defendants filed a notice of removal (# 1) to the United States District Court for the District of Massachusetts. Wilder filed her First Amended Complaint (# 15) on March 21, 2010. On April 8, 2010, the defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint (# 18), an accompanying Memorandum of Law (# 19), and the Affidavit of Peter Bryan Moores (# 19–1) with accompanying exhibits.[1] In a nutshell, the defendants contend that none of Wilder's claims state a claim upon which relief may be granted. (# 18 at 1) On April 21, 2010 the plaintiff filed an Opposition to the Defendant's Motion to Dismiss (# 20) and an accompanying memorandum in support of her opposition (# 21). With leave, the defendants filed a reply brief in support of their motion to dismiss. (# 23) At this juncture, the motion to dismiss is poised for resolution.

### II. Factual Background

On June 28, 2008, the plaintiff purchased a used 2004 Grand Cherokee Jeep from Toyota of Watertown, Massachusetts for a total price of $21,751.80 with a TMCC Vehicle Service Agreement and with financing through TFS. (# 15 ¶ 9) On that

---

1. The exhibits include a copy of the contract at issue (# 19–2), and a copy of the "Rights of Defaulting Buyer under the Massachusetts Motor Vehicle Installment Sales Act," (# 19–3). Because the first amended complaint expressly depends on and quotes from both of these documents, the Court may consider them in deciding the motion to dismiss. *See Trans–Spec Truck Service, Inc. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 500, 172 L.Ed.2d 359 (2008).

same date, both the plaintiff and a Toyota representative signed a written Retail Installment Contract that outlined the plaintiff's payment obligations and the rights of both parties in the case of default. Toyota of Watertown assigned its rights under the Contract to TMCC. (# 15 ¶ 15) In January 2009, the plaintiff defaulted on her payments. (# 15 ¶ ¶ 35–36) Shortly thereafter, TMCC sent the plaintiff a Notice of Default (*see* # 19–3), which informed her, among other things, that payment of $462.65 was required by January 29, 2009 to cure the default and avoid repossession. (# 15 ¶ 37; # 19–3) Wilder alleges that she made two attempts at payment, both through her electronic account. Her first attempt at payment failed because her account lacked sufficient funds. (# 15 ¶ ¶ 37–38) Her second attempt to cure default, which Wilder alleges occurred between February 5 and February 10, 2009, failed because her electronic account was closed to payment. (# 15 ¶ ¶ 39, 51) On February 10, 2009, the defendants repossessed the vehicle. (# 15 ¶ 43)

Wilder asserts that by blocking her electronic account to payment prior to repossession, the defendants violated Mass. Gen. Laws ch. 255B, § 20A(e) and consequently breached the contract term that required the defendants to abide by Massachusetts law regarding curing default. (# 15 ¶ ¶ 62–67) Wilder further alleges that the defendants' actions constitute a breach of "the covenant of good faith and fair dealing inherent in every contract in Massachusetts." (# 15 ¶ 70) In addition, the plaintiff argues that the defendants committed fraud by knowingly adopting a policy of closing accounts to payment prior to repossession while simultaneously endorsing contracts that require compliance with Mass. Gen. Laws ch. 255B, § 20A(e). (# 15 ¶ ¶ 74–79) Finally, the plaintiff asserts violations of Mass. Gen. Laws ch. 255B, § 20A(e) and ch. 93A. (# 15¶ ¶ 83–92)

### III. Standard of Review

When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept the complaint's well-pleaded facts as true and indulge all reasonable inferences in the plaintiff's favor. *Cook v. Gates,* 528 F.3d 42, 48 (1st Cir.2008), *cert. denied sub nom. Pietrangelo v. Gates,* —— U.S. ——, 129 S.Ct. 2763, 174 L.Ed.2d 284 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted) (alteration in original).

### IV. Discussion

The defendants advance several arguments in support of their motion to dismiss. First, they contend that the Wilder's two statutory claims must fail because, read correctly, the right to cure default afforded by Mass. Gen. Laws ch. 255B, § 20A "terminates on the date set forth in the Notice of Default, not less than 21 days after it is mailed," and Wilder admits she did not cure by that date. (# 19 at 2) Second, the defendants argue that the plaintiff's claims for "breach of contract and breach of implied covenant of good faith and fair dealing must also fail because they are likewise based on the alleged violations of Mass. Gen. Laws ch. 255B, § 20A(e)." (# 19 at 3) Finally, the plaintiff's fraud claim must fail, the defendants argue, because it "fails to meet the requirement to plead facts with 'particularity' under Rule 9(b), and does not allege any facts that would

satisfy the elements of fraud in any event." (# 19 at 3)

## A. Breach of Contract

The contract at issue provides: "If you default under this contract you will have the right to cure your default in the manner and to the extent specified in the Massachusetts General Law Annotated." (# 15 ¶ 16) Wilder's breach of contract claim is premised on Mass. Gen. Laws ch. 255B, § 20A, which governs the rights and duties of debtors and creditors after a default in a retail installment contract. According to Wilder, the defendants breached the contract by failing to comply with the terms of Mass. Gen. Laws ch. 255B, § 20A(e), and "by 'clos(ing) [her] account' and making sure the 'account was no longer open to accept payment'" prior to repossession. (# 15 ¶¶ 65, 67) The defendants argue that Wilder misreads the underlying statute, and that she fails to state a claim for breach of contract under the statute, properly construed.

Specifically, the parties dispute the import of Mass. Gen. L. Ch. 255B § 20A(e). That provision cannot be read in isolation. The full text of the statute is set out in the margin.[2]

2. (a) An agreement of the parties in a retail installment contract defining default is enforceable only to the extent that the default is material and consists of the buyer's failure to make one or more installments as required by the agreement; or the occurrence of an event which substantially impairs the value of the collateral.

(b) After a default by a buyer under a consumer credit transaction, the secured creditor may not bring an action against the buyer or proceed against the collateral until he gives the buyer the notice described in this section. The notice so required shall be deemed to be delivered when delivered to the debtor or when mailed to the debtor at the debtor's address last known to the creditor. If a buyer cures a default after receiving notice and again defaults, the creditor shall give another notice before bringing an action or proceeding against the collateral with respect to the subsequent default, but no notice is required in connection with a subsequent default if, within the period commencing on the date of the consumer credit transaction subject to this section and the date of the subsequent default, the debtor has cured a default after notice three or more times.

(c) The notice shall be in writing and shall be given to the buyer ten days or more after the default. The notice shall conspicuously state the rights of the buyer upon default in substantially the following form:—
The heading shall read:—'Rights of Defaulting Buyer under the Massachusetts Motor Vehicle Installment Sales Act.' The body of the notice shall read:—'You may cure your default in (describe transaction in a manner enabling buyer to identify it) by paying to (name and address of creditor) (amount due) before (date which is at twenty-one days after notice is mailed). If you pay this amount within the time allowed, you are no longer in default and may continue on with the transaction as though no default had occurred.
If you do not cure your default by the date stated above, the said creditor may sue you to obtain a judgment for the amount of the debt or, if applicable, may take possession of the collateral.
If the creditor takes possession of the collateral, if any, you may get it back by paying the full amount of your debt plus any reasonable expenses incurred by the said creditor if you make the required payment within twenty days after he takes possession.'
(d) During the twenty-one day period after delivery of the notice required by this section the creditor may not because of that default accelerate the unpaid balance of the obligation, bring action against the buyer, or proceed against the collateral.
(e) Unless the secured creditor has first notified the buyer that he has elected to accelerate the unpaid balance of the obligation because of default, brought action against the buyer, or proceeded against the collateral, the buyer may cure a default consisting of a failure to pay money by tendering the amount of all unpaid sums due at the time of tender, without acceleration, plus any unpaid delinquency or deferral charges. Such a cure shall restore the buyer to his rights under the agreement as though the defaults had not occurred subject to the provisions of subsection (b).

The broad purpose of the statute is to require a secured creditor to provide notice to the debtor that his or her default may result in the secured creditor bringing an action against the buyer or "proceeding against the collateral," and to give the debtor an opportunity to cure the default by paying the amount in arrears by a certain date. The dispute here concerns whether and to what extent the debtor has a statutory right to "cure" after the 21–day period described in the notice has expired. Wilder alleges that she attempted to cure by making a payment after the 21 days expired but before the defendants repossessed her car, and that she was unable to make a payment because the defendants had closed her electronic account to payment. The question is whether these facts sufficiently allege a violation of the statute.

Wilder points to the following language in subsection (e) to support her position: "Unless the secured creditor has first notified the buyer that he has elected to accelerate the unpaid balance of the obligation because of default, brought action against the buyer, or proceeded against the collateral, the buyer may cure a default consisting of a failure to pay money by tendering the amount of all unpaid sums due at the time of tender, without acceleration, plus any unpaid delinquency or deferral charges." According to Wilder, subsection (e) provides the buyer with a right to cure up until 1) the creditor has notified the debtor of its intent to accelerate the debt, or 2) brought an action against her, or 3) proceeded against the collateral. Wilder further contends that the phrase "proceeded against the collateral" means "to repossess the collateral." She argues that this subsection of the statute entitled her to cure her default up until the time of repossession, just as the subsection appears to

permit cure up until the time the creditor has noticed its intent to accelerate the loan or filed suit. Wilder alleges that she attempted to cure before the defendants took any of these actions. She maintains that the defendants breached the retail sales contract by closing her account to payment prior to taking these actions and purportedly preventing her from tendering payment while she still had a statutory right to cure, even though the 21–day period had already expired.

The defendants, on the other hand, argue that Wilder's right to cure under the statute expired at the end of the 21–day notice period. Alternatively, the defendants contend that, at the latest, Wilder's right to cure expired when the defendants "proceeded against the collateral." According to the defendants, this phrase means "to take steps to repossess the collateral." The defendants maintain that closing Wilder's account to payment was included in the steps that they took in order to repossess the car.

The first question then is whether a debtor has any continuing rights to cure the default before a creditor has "proceeded against the collateral." If not, then Wilder's allegation that she attempted to cure after the 21–day period expired would be immaterial as a matter of law. The Court agrees that the subsection appears to permit a debtor to tender cure during the interval after the expiration of the 21–day period, but before the creditor has taken one of the enumerated courses of action, including "proceed[ing] against the collateral." One commentator, writing shortly after the statute's adoption, observed:

> The inability of the creditor to accelerate the unpaid balance during the 21 days after the notice of intention to re-

Mass. Gen. L. Ch. 255B, § 20A(a)-(e).

possess is a significant change of great practical value to a defaulting debtor. . . . In transactions [governed by the statute] all the debtor will have to do is make the payments in arrears plus late charges. He can do this at any time during the 21 day notice period . . . *and thereafter until the creditor notifies him of acceleration, sues on the debtor proceeds against the collateral.*

James F. Queenan, Jr., *"The New Consumer Repossession Law,"* 58 *Mass. L. Quarterly* 412, 413 (1973) (emphasis added). Although no Massachusetts court has interpreted this provision, any other reading of the statute would render subsection (e) superfluous. The Uniform Consumer Credit Code, on which the Massachusetts legislation was based in part, contains no such language, providing instead: "Until expiration of the minimum applicable period after the notice is given, the consumer may cure all defaults consisting of a failure to make the required payment by tendering the amount of all unpaid sums due at the time of the tender, without acceleration, plus any unpaid delinquency or deferral charges." *Uniform Consumer Credit Code,* (1974) (U.L.A.) § 5.111. The Massachusetts legislature might have adopted similar language, but it did not; instead, the Massachusetts legislation provides that "[u]nless the secured creditor" has taken one of the enumerated actions, the "buyer may cure." Mass. Gen. L. Ch. 255B § 20A(e). Surely the Massachusetts legislature intended this additional subsection to add something more to the consumer protection statutes. A gap will necessarily exist between the expiration of the 21–day period, and the time the creditor has taken action; the legislature chose to remove doubts about the debtor's rights during this period. Yet, under the defendants' reading of the statute, subsection (e) would be rendered superfluous.

The defendants further argue that, even if the statute entitled Wilder to cure beyond the 21–day period, Wilder was not entitled to cure after the defendants "proceeded against the collateral." In their view, the defendants "proceeded against the collateral" when they "took steps to repossess the car." The Court rejects this reading of the phrase.

Clauses one and two in subsection (e) suggest that the creditor will make manifest its intention to pursue a given course of action through some form of notice: the express notice "to accelerate the unpaid balance of the obligation," or the notice that is inherent in bringing suit. "Proceed[ing] against the collateral" does not inherently require a second notice. Indeed, Mass. Gen. L. Ch. 255B § 20B(a), the section immediately following the one at issue, provides that "[i]n taking possession the secured creditor under a consumer credit transaction may proceed without a prior hearing," that is, may utilize self-help repossession and proceed without judicial process, "if the default is material and consists of the debtors [sic] failure to make one or more payments as required by the agreement. . . ." Thus, this section of the statute makes clear that a secured creditor is not obliged to provide notice—other than the notice required in section 20A—before "proceeding against the collateral."

■ The legislative history sheds some light on the choice of language in the statute. At least one version of the bill contemplated eliminating the self-help provision contained in ch. 255B, § 20B(a), to provide: "A creditor may proceed against collateral only by judicial process. In any action where possession of the collateral is part of the relief sought by a holder no court may make, execute or enforce an order or process with respect to the possession until the right of the holder to take

possession has been determined at a hearing at which the buyer has an opportunity to be heard." H.R. 66, An Act Relative to Taking Possession of Collateral and Deficiency Judgments (Ma. 1973).[3] Proceeding against the collateral in this sense would indeed have required the additional notice that comes with judicial process. But this law was not adopted, and self-help repossession is still the law in Massachusetts; nothing in the consumer statutes requires a secured creditor to notify a debtor about its intention to repossess a car beyond the statutory notice provision required in section 20A. Thus, whatever the meaning of "proceeding against the collateral" in this context, it cannot mean, per the terms of Mass. Gen. L. Ch. 255B, § 20B(a), that the creditor must supply additional notice before it repossesses the car.

Still, two of the three clauses contained in subsection (e) appear to create a bright-line date until which a debtor may tender a cure, and that bright line is marked by affirmative action through which the creditor effectively announces its election to proceed on a given course. It follows then that a bright-line date should apply to the third clause. The Court thus rejects the defendants' reading of, "proceeding against the collateral" to mean "taking steps to repossess the collateral." Under this reading, the defendants could take steps to repossess the car (such as, in the defendants' view, issuing an internal notice of repossession), but none of those steps would be known to the debtor. Repossessing the car, however, plainly cuts off any right to cure. This reading squares with

the provision contained in the statutory notice that states: "If the creditor takes possession of the collateral, if any, you may get it back by paying the full amount of your debt . . . if you make the required payment within twenty days after he takes possession." Mass. Gen. L. Ch. 255B, § 20A(c). That is, after that point, the debtor may no longer "cure" by simply tendering the arrearage, just as in the previous two clauses.

■ The defendants say that this reading of the statute renders the notice provisions superfluous. That is not necessarily so. The notice of default warns of the implications of default, and the 21–day period supplies the parties with a bright-line date after which the creditor, by law, may take action. The required notice operates as a condition precedent to the secured creditor's ability to pursue a given course of action. The notice states "[i]f you do not cure default by the date stated above, the creditor *may* sue you to obtain a judgment for the amount of the debt or may take possession of the collateral." (# 19–3) The subsection leaves open the possibility that the creditor may elect to take no action if the debtor effectively cures. But until the creditor has 1) notified the debtor of its intent to accelerate the loan, or 2) filed suit, or 3) repossessed the car, a creditor's monetary remedy is limited to accepting the "cure," amount, *i.e.,* "the amount of all unpaid sums due at the time of tender, without acceleration, plus any unpaid delinquency or deferral charges"; the creditor may not, however, demand "the unpaid balance of the obligation be-

---

**3.** This version of the bill stated its purpose as follows:

This proposed legislation would clarify and secure a debtor's rights. The bill requires that notice be given a debtor before a creditor can execute his rights upon default. The legislation also mirrors recent United States Supreme Court decisions [*i.e., Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)] by requiring that there must be a judicial determination before a creditor can take possession of the collateral.

H.R. 59 (Ma. 1973)

cause of the default" until it has effectively (by taking one of the enumerated steps) indicated that it will not accept tender of the cure amount.

Finally, the defendants argue that this reading of the statute will produce absurd results. The defendants posit a scenario in which a repossession company arrives to repossess a car and a debtor tenders a check to the driver in an attempt to cure the default. This result will be avoided, however, because a debtor's "tender" must comport with Massachusetts law. Massachusetts law defines "tender" as follows:

> 'To constitute a valid tender the money must be actually produced and offered to the person who is entitled to receive it.... There must be an actual production of the money unless such production be dispensed with by the declaration of the party to whom it is due that he will not receive it, or by some equivalent declaration or act. A mere offer to pay or a statement that the party has the money and is ready and willing to pay, without actual production of it, is not sufficient to constitute a valid tender.'

*Metropolitan Credit Union v. Matthes*, 46 Mass.App.Ct. 326, 333, 706 N.E.2d 296, 301–302 (1999) (quoting *Mondello v. Hanover Trust Co.*, 252 Mass. 563, 567, 148 N.E. 136, 137 (1925)). There can be no serious question that Wilder would not have been entitled to tender cure to the repossession company unless that company was "entitled to receive it." *Id.*[4]

Accordingly, for all the above reasons, the Court shall recommend that the defendants' motion to dismiss this claim be denied.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

▆▆▆▆ The plaintiff claims that by failing to give her the benefit of the bargain that was the basis of the contract, and by resorting to violations of Mass. Gen. Laws ch. 255B, § 20A(e) and ch. 93A, the defendants breached the covenant of good faith and fair dealing. (# 15 ¶¶ 69–71) Under Massachusetts law,

> [t]he covenant of good faith and fair dealing is implied in every contract. The covenant is preserved so long as neither party injures the rights of another to reap the benefits prescribed by the terms of the contract. The duty of good faith and fair dealing concerns the manner of performance.

> The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.

*Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E.2d 957, 964 (2004) (citations and footnote omitted); *see also Chokel v. Genzyme*

---

**4.** The question remains here whether Wilder's attempt to access her electronic account amounted to a valid tender, but that question is not before the Court.

In this vein, the defendants further argue that the plaintiff fails to state a claim because the "Plaintiff alleges she only attempted to cure electronically, and not by any other means.... The statute does not provide a right to make payments electronically." (# 19 at 12 n. 3) Although the statute does not entitle a debtor to make electronic payments,

the plaintiff has alleged that "[d]efendants, by 'clos(ing) her account to posting' prevented Plaintiff from curing the default by any other means as well." (# 15 ¶ 40) (emphasis added) Whether other routes of payment were available to her to tender her payment or indeed whether the defendants would have accepted tender under the circumstances of their closing her account remain questions of fact that are not appropriate for resolution on a motion to dismiss.

*Corp.* 449 Mass. 272, 276, 867 N.E.2d 325, 329 (2007). "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." *Speakman v. Allmerica Financial Life Ins.*, 367 F.Supp.2d 122, 132 (D.Mass. 2005).[5]

■ Here, the plaintiff alleges that the defendants closed her account to payment so that she was unable to exercise her statutory right to cure her default. Although it is true that nothing in the contract or in Massachusetts law expressly requires a creditor to provide electronic access to a debtor in order to make payments or cure a default, Wilder alleges that she was told to cure her default by direct debit (# 15 ¶ 37), that the defendants "block[ed] her access to her account in the manner in which she usually accessed the account," (# 15 ¶ 48), that "Defendants admit ... that 'as of February 5, Ms. Wilder's account was no longer open to accept payment," (# 15 ¶ 42), and that the defendants "knew or should have known that by blocking Plaintiff's usual electronic access to her account they would seriously hinder her ability to cure the default before repossession," (# 15 ¶ 44). In short, Wilder alleges that she had a contractual right to cure and that the defendants impeded her exercise of that right unfairly by closing her account to payment; a fair inference is that the defendants would not have accepted a tender of payment. The Court concludes that the plaintiff has alleged sufficient facts to state a claim for breach of the covenant of good faith and fair dealing. Drawing all inferences in favor of the plaintiff, such conduct, if true, would have deprived the plaintiff of the substantial benefits of the contract.

## C. Fraud

The plaintiff also asserts a claim of fraud against the defendants. She alleges that the defendants knew it was their policy to close accounts to payment prior to repossession, that they knew they had not contracted for this right, and that they knew or should have known the plaintiff would rely on the contract provision giving her a right to cure default in the manner specified by Massachusetts law. (# 15 ¶¶ 74–78) The plaintiff further alleges that she "relied on Defendants' express agreement to abide by Massachusetts General Law." (# 15 ¶ 79) The defendants contend that the plaintiff's claim should be dismissed

5. As one leading commentator has explained, determination of whether a party has breached the covenant of good faith and fair dealing necessitates some inquiry into the course of dealing between the parties:

> Every contract imposes an obligation of good faith and fair dealing between the parties in its performance and its enforcement, and if the promise of the defendant is not expressed by its terms in the contract, it will be implied. The duty embraces, among other things, an implied obligation that neither party shall do anything to injure or destroy the right of the other party to receive the benefits of the agreement.
>
> In determining whether a party has breached the obligation or covenant of good

faith and fair dealing, a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing that may exist between the parties. Thus, whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact.

23 S. Williston, *Contracts* § 63:22 (4th ed. 2002) (footnotes omitted), *cited in Uno Restaurants, Inc.*, 441 Mass. at 385, 805 N.E.2d at 964.

because it fails to meet both the heightened pleading requirements set forth in Fed.R.Civ.P. 9(b) and the state substantive requirements for fraud. (# 19 at 13–14)

Although the Court looks to Massachusetts law to determine whether a claim of fraud has been pled, Fed.R.Civ.P. 9(b) provides a heightened pleading standard for fraud claims in federal court. *See North American Catholic Educational Programming Foundation, Inc. v. Cardinale,* 567 F.3d 8, 13 (1st Cir.2009). Rule 9(b) provides:

> **Fraud, Mistake; Condition of the Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

To satisfy this heightened pleading standard, the plaintiff must aver the "who, what, where, and when of the allegedly false or fraudulent representation." *Rodi v. Southern New England School of Law,* 389 F.3d 5, 15 (1st Cir.2004). The First Circuit has further noted that "the specificity requirement extends only to the particulars of the allegedly misleading statement itself." *Rodi,* 389 F.3d at 15 (citing *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61, 66 (1st Cir.2004)). "The other elements of fraud, such as intent and knowledge, may be averred in general terms," *id.,* if the complaint "also identif[ies] the basis for inferring scienter," *Cardinale,* 567 F.3d at 13.

To establish a false representation, it is sufficient under Massachusetts law " 'to show proof of a statement made, . . . which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; actual intent to deceive on the part of the defendants need not be shown.' " *Pearce v. The Duchesneau*

*Group, Inc.,* 392 F.Supp.2d 63, 73 (D.Mass. 2005) (quoting *Russell v. Cooley Dickinson Hosp., Inc.,* 437 Mass. 443, 458–459, 772 N.E.2d 1054, 1066 (2002) (further internal quotation marks and citation omitted)). The plaintiff alleges that pursuant to provision # 9 of the contract, the defendants expressly agreed that the plaintiff would have the right to cure default in the manner and to the extent specified in the Massachusetts General Laws Annotated. (# 15 ¶ 16) Further, the plaintiff claims the defendants "knew it was their policy when the time provided in the Notice of Rights had expired to close a customer's account so that it was 'no longer open to accept payment' prior to taking possession thereby preventing a customer from exercising a contractual an [sic] legal right to cure the default." (# 15 ¶ 74) Although "[u]nder Massachusetts law, a promissory statement cannot be the basis for a claim of misrepresentation unless at the time the promise was made the promissor had no intention of carrying it out," *Aretakis v. General Signal, Inc.,* No. 05–10257–DPW, 2006 WL 1581781, at *11 (D.Mass. June 7, 2006) (quoting *Gerli v. G.K. Hall & Co.,* 851 F.2d 452, 456 (1st Cir.1988)); *see also Fanger v. Leeder,* 327 Mass. 501, 505, 99 N.E.2d 533, 535 (1951) (under Massachusetts law, an allegation that the defendant knew at the time a promise was made that he did not intend to carry out the promise can support a claim of fraud), here the plaintiff alleges that the defendants' policy of closing account to payment, and impeding tender of cure, reflected an intention of not carrying out its obligations under Massachusetts statutory law. Whether a fact finder could infer such an intention is a separate question, better resolved at a later stage in proceedings, but the allegations sufficiently identify a basis from which scienter may be inferred.

Moreover, Massachusetts law provides that "actionable misrepresentation may occur without the speaker's knowledge that the statement is false if the truth is reasonably susceptible of actual knowledge, or otherwise expressed, if, through a modicum of diligence, accurate facts are available to the speaker." *Acushnet Federal Credit Union v. Roderick*, 26 Mass. App.Ct. 604, 604, 530 N.E.2d 1243, 1244 (1988) (collecting cases). In short, the allegation is that the defendants knew they had a policy of closing accounts to payment without regard to the debtor's statutory right to cure beyond the notice date, and that they represented that they would permit Wilder to cure default in accordance with Massachusetts law while knowing it was their policy to close customer accounts at the end of the twenty-one day period. The Court concludes that these allegations sufficiently state a claim of fraud under Massachusetts law.

### D. Massachusetts General Laws ch. 255B, § 20A(e)

The plaintiff's fourth cause of action alleges a violation of Mass. Gen. Laws ch. 255B, § 20A(e). The plaintiff claims the defendants violated this provision by "knowingly and willfully [adopting] a policy when the time provided in the Notice of Rights had expired to close a customer's account so that it was 'no longer open to accept payment' prior to taking possession [and] thereby preventing a customer from exercising a legal right to cure the default...." (# 15 ¶ 85) The defendants argue that this claim fails because "the statute does not require a creditor to provide a right to cure after the date in the Notice of Default." (# 19 at 15).

The plaintiff states a viable claim for violation of subsection 20A(e). As discussed above, section 20A(e) requires a creditor to allow a debtor to cure default after the expiration of the 21–day cure period until the creditor has notified the debtor of its intent to accelerate the unpaid balance, brought action, or proceeded against the collateral. As explained above, the plaintiff has pled that she was unable to cure default through her electronic account or by any other means. Because she has claimed that all payment methods were foreclosed to her, she has sufficiently alleged that the defendants prevented her from curing default in violation of § 20A(e).

### E. Massachusetts General Laws ch. 93A

The defendants also move to dismiss the plaintiff's fifth cause of action for violation of Massachusetts General Laws ch. 93A, "which forbids 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 107 (1st Cir.2009) (quoting Mass. Gen. L. ch. 93A, § 2(a)). The basis of the plaintiff's chapter 93A claim is that the defendants "knew or should have known that closing a customer's account so that it was 'no longer open to accept payment' prior to taking possession thereby preventing a customer from exercising a contractual and statutory right to cure the default in violation of Mass. Gen. Laws ch. 255B, § 20A(e) was an unfair, deceptive, and oppressive business practice in violation of Mass. Gen. Laws ch. 93A." (# 15 ¶ 90)

"A chapter 93A claim 'requires a showing of conduct that (1) falls within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to [consumers or other businesspersons].'" *FAMM Steel, Inc.*, 571 F.3d at 107 (quoting *Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 37 (1st Cir.2008)) (alteration in original) (further internal quotation marks and citation

omitted). As discussed above, the plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing pass muster under 12(b)(6), thus establishing that the conduct complained of falls within both a statutory and a common-law concept of unfairness.

■ "[M]ere breaches of contract, without more, do not violate chapter 93A." *Pepsi–Cola Metro. Bottling Co., Inc. v. Checkers, Inc.,* 754 F.2d 10, 18 (1st Cir. 1985) (citing *Whitinsville Plaza, Inc. v. Kotseas,* 378 Mass. 85, 100, 390 N.E.2d 243, 251 (1979)). However "conduct 'in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes.'" *Bradley v. Dean Witter Realty, Inc.,* 967 F.Supp. 19, 29 (D.Mass.1997) (quoting *Anthony's Pier Four, Inc. v. HBC Assoc.,* 411 Mass. 451, 474, 583 N.E.2d 806, 821 (1991)). The plaintiff has alleged that the defendants knowingly adopted a policy of closing accounts to prevent customers from exercising their right to cure default. Whether the defendants' alleged policy was unfair "is a matter of fact," *Spence v. Boston Edison Co.,* 390 Mass. 604, 616, 459 N.E.2d 80, 88 (1983), that can await further proceedings.

Finally, the plaintiff has also adequately alleged that the defendants' conduct caused her substantial injury. She claims the defendants' sale of her car "caus[ed] her significant financial loss including loss of use of the vehicle, loss of insurance paid and loss of the benefit of the extra care contract." (# 15 ¶ 57) Because the plaintiff has alleged sufficient facts to support each of the three elements required to state a claim for unfair business practices under Mass. Gen. Laws ch. 93A, the defendants' motion to dismiss the claim should be denied.

## V. Recommendation

For all of these reasons, I RECOMMEND that the defendants' Motion to Dismiss Plaintiff's First Amended Complaint (# 18) be DENIED.

## VI. Review by the District Judge

The parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services,* 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

January 18, 2011.